[Crim. Nos. 21918, 22000, 22415. Second Dist., Div. Five. Nov. 14, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT HENRY BUCKNER, JR., et al., Defendants and Appellants.

COUNSEL

Luke McKissack for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert F. Katz and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STEPHENS, J.**—Defendants were charged by information with conspiracy to sell marijuana (Pen. Code, § 182) in count I, sale of marijuana (Health & Saf. Code, § 11531) in count II, possession of marijuana for sale (Health & Saf. Code, § 11530.5) in count III, and possession of marijuana (Health & Saf. Code, § 11530) in count IV. Motions pursuant to Penal Code sections 995 and 1538.5 to set aside the information and to suppress evidence were denied.

The cases of defendants Buckner and Marx were submitted on the transcript of the preliminary hearing. Each was found not guilty of counts I, II, and IV, and guilty of count III. Sentences of each for the terms prescribed by law were imposed but suspended; probation was granted on condition, inter alia, that defendant Buckner spend the first 10 months, and defendant Marx, the first 7 months, in the county jail. In lieu of granting Marx's motion for a new trial, the court reduced the offense to possession of marijuana, a lesser included offense. (Health & Saf. Code, § 11530.) Defendant Threatt withdrew his plea of not guilty to count II (Health & Saf. Code, § 11531 violation), and pled guilty. Sentence was imposed for the term prescribed by law, but suspended; probation was granted on condition, inter alia, that defendant Threatt spend the first eight months in the county jail. Defendants appeal.

Viewing the evidence in the light most favorable to respondent, as required on appellate review (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]), the facts are as follows: Early in January 1970, Los Angeles Deputy Sheriff Ventor received information from informant Pitchiano that one Charles Kaufman was dealing in large quantities of marijuana. Informant and Sheriff Ventor arranged to contact Kaufman, and an attempt was made to set up a purchase of 50 kilos of marijuana. A deal was not then consummated, but Kaufman informed the

callers that a deal could perhaps be arranged in the future. On April 1, 1970, Pitchiano placed a call to Kaufman at his residence. The call was monitored by members of the sheriff's department. A deal was arranged for the purchase of approximately 100 kilos at $130-135 apiece. Pitchiano was to bring $5,000 to Kaufman's residence to show Kaufman. The kilos were to be delivered elsewhere and then the balance would be paid. At approximately 9:30 p.m., Pitchiano and Deputy Ventor arrived at Kaufman's residence in a van; Deputy Natisin arrived in another vehicle, carrying the money in the trunk of the car. They met with Kaufman on the front steps. The $5,000 was shown to Kaufman by Natisin. Natisin then drove to a prearranged location to await a phone call from Pitchiano instructing him to bring back to Kaufman's residence the balance due. Kaufman then arranged to have a Christopher Deegan accompany Deputy Ventor to the location where the marijuana was to be obtained. Deegan drove Ventor to that location and dropped him off, the understanding being that the car would return in approximately 15 minutes with the kilos. Deegan drove off, followed by a deputy sheriff. The deputy observed the vehicle being driven to a house, from which several boxes were loaded into the vehicle. Deegan left the house carrying a suitcase, and departed in another car. Defendant Threatt then drove the van back to the location where Ventor had been dropped off. After locating Ventor, the delivery was made. Ventor then placed a call to Pitchiano at Kaufman's residence and told him that he had seen the marijuana and to get the money. Threatt was later arrested at this location when additional officers arrived.

Meanwhile, Kaufman's residence was under surveillance by members of the sheriff's department. At approximately 10:30 p.m., Deputy Chavez observed a green G.T.O. arrive at the Kaufman residence. The passenger, Deegan, carrying a suitcase, exited from the vehicle and entered the Kaufman residence. Immediately thereafter, Kaufman was seen exiting from the dwelling by the front door. At this time, Deputy Natisin gave the prearranged signal to arrest Kaufman. Kaufman was met near the door, but outside the dwelling, by Natisin, who told Kaufman he was under arrest for violation of the state's narcotic law. Other deputies converged on the scene. A Deputy Tolfa testified that he detected the odor of burning marijuana coming from inside the house.[1] The front door of the dwelling was

---

[1] In answer to the questions shown, Tolfa testified as follows: "Q. And what if anything did you observe at the time while you were at the front door with the door open? A. I smelled a strong odor of burning marijuana, what appeared to me to be burning marijuana and heard the people inside . . . . Q. And what did you do after this detection? A. Myself and fellow deputies who were at the front entrance entered the house. Q. And why did you enter the house? A. Because of the smelling of marijuana . . . . Q. Then when Kaufman was arrested, you just marched into the house, is that it? A. Smelled the marijuana and marched in, yes, with other deputies.

open, and the house was entered by several deputies, followed by Deputy Tolfa.[2] Prior to their entrance, none of the deputies announced his presence, demanded admittance, or explained the purpose for which the officers' entrance was desired. After numerous officers had entered the house, Kaufman was taken into the house by Natisin. After several other officers had preceded him, Deputy Chavez upon entering went to the kitchen, where he observed defendant Buckner seated with others around a table.[3] A jar containing marijuana seeds was found on top of the kitchen table. Also observed on the table was a smouldering marijuana cigarette in the ashtray. When the deputies entered the living room, they observed defendant Marx sitting on a couch. A marijuana cigarette was in an ashtray in front of him. In the company of Kaufman, several deputies and a federal agent then proceeded upstairs to look for additional people that might be involved. Inside an upstairs bedroom, Deputy Tolfa observed three packages in plain view on the bed which were wrapped in the manner in which marijuana is customarily wrapped. On the floor near the head of the bed were a black and white scale and a fourth similarly wrapped package. All said packages were later found to contain marijuana. Tolfa then went to another bedroom, still searching for other persons, and in that bedroom observed

Other deputies also there beside myself and Natisin. Q. How many? A. Deputy Chavez, myself, Deputy Franco, Deputy Natisin and there were some federal narcotic agents. I don't recall their names right now. . . . Q. . . . Is it fair to say you did not knock on the door before you entered? A. I did not knock, that's fair to say. Q. Did any of your brother officers knock? A. To my — I am only speaking for myself—to my knowledge I did not knock, no. . . . . Q. Did you hear anybody knock on the door? A. No, I didn't, no. Q. Did you hear anybody say, 'We're narcotics agents and we are going to come in,' or anything like that? A. No not words to that effect."

[2] Thus, even if Officer Tolfa smelled marijuana from outside the house and decided to join his fellow officers, his smelling of contraband does not validate the previous illegal entry. And once that illegal entry is effected, the search is invalid. (*People* v. *Haven,* 59 Cal.2d 713 [31 Cal.Rptr. 47, 331 P.2d 927].)

[3] Deputy Chavez, in answer to the questions shown, testified as follows: "Q. Did anybody go into the house to your knowledge? Did any law enforcement officers go in the house before you, to your knowledge? A. Yes. Q. Who? A. I don't recall. Q. But you weren't number one? A. That's right. Q. Did you see how they got into the house? A. Through the front door. Q. Did you see a law enforcement officer open the door? A. The door was open. Q. How much? A. I don't recall how much. Q. When you went inside the house, where did you go first? A. Directly to the kitchen area. . . ." "Q. After [Kaufman] was placed under arrest, did the officers enter this location? A. Yes, sir. A. Where did you go when you entered the location? A. I immediately entered and then walked north into the kitchen area. Q. What was your reason for going into the kitchen area? A. I heard voices in the kitchen area. . . . Q. Did you smell the odor of marijuana in the house? A. In the house? Yes, sir, I did."

a jar on the top of the table containing a green plant material resembling marijuana.

As grounds for reversal, defendants contend that (1) the evidence is insufficient to sustain a conviction for possession of marijuana with intent to sell, or for the sale of marijuana; (2) the arrest, search and seizure failed to comply with the provisions of Penal Code section 844;[4] and (3) the search of the dwelling was conducted in violation of the defendants' rights as guaranteed by the Fourth Amendment. We have concluded that defendants' second and third assignments of error have merit and compel a reversal of the convictions of defendants Buckner and Marx. However, since the conviction of defendant Threatt is in no way tainted by the illegal entry or search, it is affirmed.

In *Beckers* v. *Superior Court,* 9 Cal.App.3d 953, 958 [88 Cal.Rptr. 602], the court states: "Evidence of a search and arrest of a person in a dwelling, following an unlawful entry therein by the police . . . is inad-

---

[4]Penal Code section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

In *Parsley* v. *Superior Court,* 9 C.3d 934, 938-939, our Supreme Court stated: "Penal Code section 1531 provides: 'The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose he is refused admittance.' An equivalent provision, Penal Code section 844, governs entry without a warrant to effect an arrest. (See *People* v. *Gastelo* (1967) 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706].) The negative inference flowing from these provisions serves to bar most unannounced entries and to render inadmissible evidence seized pursuant thereto. (*Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 295 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Maddox* (1956) 46 Cal.2d 301, 305-307 [294 P.2d 6].) We have held, however, that failure to comply with sections 1531 and 844 does not compel application of the exclusionary rule 'if the specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, or permit the destruction of evidence.' (*People* v. *Tribble* (1971) 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589]; *People* v. *Gastelo* (1967) *supra,* 67 Cal.2d 586, 587-588; *People* v. *Maddox* (1956) *supra,* 46 Cal.2d 301, 306.)

"We hold the superior court erred in concluding advance judicial approval may excuse compliance with statutory announcement requirements.

"Sections 1531 and 844 are striking in that the Legislature failed to include in either statute any exceptions to the rule that an officer must provide notice of his authority and purpose and seek consent to admittance before resorting to forcible entry. We have construed the statutes to contain implicit exceptions for articulated exigent circumstances on the ground that 'since the demand and explanation requirements . . . are a codification of the common law, they may reasonably be interpreted as limited by the common law rules. . . .' (*People* v. *Maddox* (1956) *supra,* 46 Cal. 2d 301, 306.)"

missible under the principles stated and applied in *Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]; [citations]."

In *Duke* v. *Superior Court,* 1 Cal.3d 314 [82 Cal.Rptr. 348, 461 P.2d 628], the Supreme Court expressly recognized that Penal Code section 844 was enacted by the Legislature to protect the fundamental right of privacy of dwelling occupants and to insure the safety of police, innocent by- standers, and occupants who may be injured as a result of violent resistance to unannounced entries. (See also *People* v. *Arias,* 6 Cal.App.3d 87, 93 [85 Cal.Rptr. 479].) Implicit within this construction is the intent that in the absence of extenuating circumstances which exceed the policy factors behind the statute (i.e., increased peril or frustration of arrest (*People* v. *Smith,* 63 Cal.2d 779, 797 [48 Cal.Rptr. 382, 409 P.2d 222])), the pro- visions of section 844 are to be complied with in all cases. (See *People* v. *Bradley,* 1 Cal.3d 80, 87-88 [81 Cal.Rptr. 457, 460 P.2d 129] and *People* v. *Norton,* 5 Cal.App.3d 955 [86 Cal.Rptr. 40].)

■ Respondent argues, however, that the letter of section 844 has not here been violated since (1) the officers entered through an open door, and (2) notice of the officers' authority was imparted to Kaufman prior to entry, and due to the exigencies of the circumstances (i.e., Kaufman's knowledge of the transaction and arrest), section 844 was substantially complied with.[5]

Clearly, standing alone, the fact of an open door would not justify the failure to comply with the provisions of section 844. (*People* v. *Bradley, supra,* 1 Cal.3d 80, 87-88; *People* v. *Norton,* 5 Cal.App.3d 955 [86 Cal. Rptr. 40]; *People* v. *Beamon,* 268 Cal.App.2d 61, 64 [73 Cal.Rptr. 604].) The presence or absence of an open door does not affect the degree of privacy which the state is bound to afford an individual in his home. (See *Sabbath* v. *United States,* 391 U.S. 585, 589 [20 L.Ed.2d 828, 833, 88 S.Ct. 1755]; *Greven* v. *Superior Court,* 71 Cal.2d 287, 292 [78 Cal.Rptr. 504, 455 P.2d 432].) It does not affect the issues of the danger of violent con- frontations between occupants and the police officers as intruders. (*Greven*

---

[5]Respondent has also raised the contention that compliance with section 844 was excused because the presence of an odor of burning marijuana indicated that contra- band was being consumed and thus entry was valid under a judicially recognized exception to section 844 to prevent the destruction of evidence. (See *People* v. *Gon- zales,* 14 Cal.App.3d 881 [92 Cal.Rptr. 660].) However, respondent's own witnesses negate this contention. The only officer to testify that he detected the odor of burning marijuana was Deputy Tolfa. However, Tolfa admitted that he did not relate this perception to anyone else, and was preceded into the building by several other dep- uties. Thus, respondent's claim that the officers sought to prevent destruction of evidence is not supported in the record.

v. *Superior Court, supra.*) Nor does it affect the problems associated with possible injury to innocent occupants and police officers due to the unannounced entry. (*People* v. *Rosales,* 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489]. Unless the occupants know the identity and purpose of the intruders, their responses would in all likelihood be the same whether the intrusion was effected through a closed or an open door.

**(2)** Respondent also contends that the arrest of Kaufman resulted in substantial compliance with the provisions of section 844. Basically, respondent asserts that since Kaufman had just made a sale of marijuana to a person who could have been an informant and had been notified of the fact of his (Kaufman's) arrest, Kaufman obviously knew that the person speaking was a police officer. Respondent's argument fails. The provisions of section 844 are not satisfied by minimal or inferential compliance. Compliance is achieved only when the surrounding circumstances clearly indicate that the elements of section 844 have been complied with. (*People* v. *Rosales,* 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P.2d 489].) The test of substantial compliance has only been applied to the explanation provision of the statute. (*People* v. *Hall,* 3 Cal.3d 992 [92 Cal.Rptr. 304, 479 P.2d 664]; *Greven* v. *Superior Court,* 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Cockrell,* 63 Cal.2d 659, 665-666 [47 Cal.Rptr. 788, 408 P.2d 116]. Attempts to expand the concept of "substantial compliance" to include the elements of announcement and demand have been flatly rejected. As stated in *Greven* (at pp. 291-292): "[T]his court has held that the requirements of section 844 were satisfied by 'substantial compliance' which fell short of strict literal compliance. In each of these cases, however, the officers prior to entry not only gave notice of their presence through knocking or some other means *but also* identified themselves as police officers. It was the second requirement of section 844, to wit, that the officers explain 'the purpose for which admittance was desired,' which we undertook to apply in light of the facts and circumstances of the case in order to determine whether 'substantial compliance' had been achieved in the absence of an express announcement of purpose. In *People* v. *Rosales, supra,* . . . at page 302, we recently restated the rationale of these cases: 'Such identification [i.e., identification as police officers without an express announcement of purpose] alone could constitute substantial compliance with section 844 only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile.' (See also *People* v. *Cockrell, supra,* . . . 665-666; *People* v. *Martin, supra,* . . . 762-763.)

"It is clear that the cases here under consideration stand for the proposition that an entry is not *necessarily* unlawful because the officers fail to

make an express announcement of purpose. It is equally clear that they go no further than that. Neither they nor any other decision of this court has ever held that 'substantial compliance' with section 844 can be achieved in the absence of an announcement by the officers identifying themselves as such. [Fn. omitted.]"

Respondent contends that based on what occurred and what was known to Kaufman, "he obviously knew that the person arresting him was a police officer." The rule of announcement set forth in Penal Code section 844 is not complied with unless the officers, prior to entry, "give notice of their authority in clear and unambiguous terms." (*Greven, supra,* at pp. 291-292; *People* v. *Norton, supra,* 5 Cal.App.3d 955, 962.) All that is shown here is that Deputy Natisin placed Kaufman under arrest as the other deputies entered the dwelling. There is no evidence that they identified themselves as officers, or that they demanded admittance. Respondent's reliance upon *Beckers* v. *Superior Court, supra,* 9 Cal.App.3d 952 is totally misplaced. There, the court, in assisting the trial court in the event of a retrial, pointed out that service of a search warrant upon the occupant of a dwelling and the occupant's preceding the officers into the dwelling from outside of it eliminate the need for section 844 compliance. In the instant case, there was no search warrant. Kaufman was outside the dwelling, and his arrest (or even his knowledge that police were present and desired admittance) could not justify the entry into the dwelling to accomplish the arrest of others. The demand and explanation provisions of section 844 must be made in a reasonable manner, directed to those actually within the premises, to comply with the dictates of the statute. As stated in *Greven, supra* (at p. 293): "[The elements of section 844 require] an effort by the officers *prior to entry* [italics added] to communicate to persons inside that they seek to be admitted in order to discharge their duties as *law enforcement officers.*" (Italics added.)

Compliance with the provisions of section 844 prior to entry, under the facts of the instant case, would have resulted in a decrease in the peril to the officers and would not have frustrated the arrests, nor resulted in the destruction of evidence. (*People* v. *Mesaris,* 14 Cal.App.3d 71 [91 Cal. Rptr. 837].) Thus, any evidence obtained as a result of the illegal entry in violation of this statute must be excluded. (*Duke* v. *Superior Court, supra,* 1 Cal.3d 314, 325; *People* v. *De Santiago,* 71 Cal.2d 18, 30 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Arias, supra,* 6 Cal.App.3d 87.)

Appellants contend that the search of the dwelling for additional suspects was illegal in that there was no reasonable cause to believe that additional

suspects were in the house and thus the evidence thereby discovered was not admissible. The recent decision in *Dillon* v. *Superior Court,* 7 Cal.3d 305 [102 Cal.Rptr. 161, 497 P.2d 505] resolves this issue. In *Dillon,* the court states: "The search of the house may not be justified as incident to the petitioner's arrest because the arrest occurred outside the house."

The convictions of defendants Buckner and Marx must be reversed since they are founded upon tainted evidence derived from the illegal entry and search of the dwelling. Both appellant Buckner and the respondent concede that the basis for Buckner's conviction for possession of marijuana for sale was the four kilos of marijuana found in Kaufman's bedroom. Since Buckner was found not guilty of count I (conspiracy to sell marijuana), not guilty of count II (sale of marijuana), and not guilty of count IV (possession of marijuana), the concession appears irrefutable. Therefore, absent the illegal entry and search, the tainted fruit of the illegal entry and search, the four kilos of marijuana found in Kaufman's bedroom, must be suppressed, leaving no evidence of possession for sale as to Buckner.

This does not determine the issues relative to defendant Threatt. The conviction of Threatt is not tainted by the illegal entry and search of the residence. Threatt's conviction was premised on his complicity in the sale of the marijuana to Deputy Ventor. Since Threatt pled guilty to the charge contained in count II, which related to contraband other than that found in the residence, his contentions of error have no merit. (See *People* v. *Martin,* 9 Cal.3d 687, 693 [108 Cal.Rptr. 809, 511 P.2d 1161]; *People* v. *Ward,* 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881].)

The judgments as to defendants Buckner and Marx are reversed; the judgment as to defendant Threatt is affirmed.

Kaus, P. J., concurred.