[Crim. No. 30913. Second Dist., Div. Four. Apr. 13, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
GROVER FRANCIS HILL, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Michael T. Shannon and William R. McVay, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—This is an appeal by the People from an order granting defendant Hill's motion to set aside an information pursuant to Penal Code section 995. The issue arises out of an arrest of the defendant and a search and seizure of contraband occurring on November 22, 1976. On that date, Police Officer Ronald J. Gilbert, a narcotics officer of the Los Angeles Police Department, with two fellow officers not in uniform and two or three uniformed officers, proceeded to 1214 West 98th Street in Los Angeles to conduct a search pursuant to a search warrant.

The search warrant which had been issued on November 19, 1976, described the premises to be searched as "1214 West 90th Street, Los Angeles. The location is described as a single story single family residence, white wood frame in color, with the numbers 1214 on the front. All storage areas and containers located both inside and outside of the premises, under the control of persons living within the premises."

In addition, the search warrant described the person to be searched in the following language: " 'Frank,' a male negro, black hair, brown eyes, 5'10", 165 lbs, 40-45 years of age."

It is to be noted that Officer Gilbert testified that he went to 1214 West *98th* Street, where the arrest and search were made, although the search warrant described the premises to be searched as "1214 West *90th* Street." (Italics added.) There is no testimony in the record to indicate that Officer Gilbert misspoke as to the address or that the reporter made an error. However, neither party has raised any question regarding this difference in Officer Gilbert's testimony and the address set forth in the search warrant.

Officer Gilbert testified that when he arrived at the address on 98th Street, he went to the rear of the premises and observed an individual come out of a door of a back structure located to the rear of the house itself, and later found out that it was the defendant. He further testified that when they went to the premises, the other officers were proceeding to various parts of the premises, including one officer going to the front door. He also testified that as he saw a male come out of the back structure, there was a woman and young children all screaming in the back yard because the police were surrounding the area.

Officer Gilbert described the structure from which he saw a male emerge and proceed northbound through the yard as appearing to be a converted garage, located 30 feet from the back door of the main building. Officer Gilbert testified that upon seeing the male emerge from the back structure, he, the officer, "observed his *general description* was the same as the description on the warrant and I asked him if he was Frank. I said, 'We have a search warrant. Come with me into the house so that we could secure the house.' We went through the back door of the residence and I yelled to Investigating Officer Elliott to come into the house."

On the basis of a search of both the main residence and the converted garage, heroin was seized together with a sawed-off shotgun. Following the preliminary hearing an information was filed which alleged in count I that defendant possessed heroin for sale on November 22, 1976, in violation of section 11351 of the Health and Safety Code. Count II of the information alleged a violation of section 12020, subdivision (a) of the Penal Code by the possession of a sawed-off shotgun having a barrel of

less than 18 inches in length. The information also alleged a prior felony conviction.

The main issue involved before us is whether, in serving the search warrant, there was police compliance with the provisions of Penal Code section 1531. Penal Code section 1531, which may be described as a companion section to Penal Code section 844,[1] provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if after notice of his authority and purpose, he is refused admittance." ■ Penal Code sections 1531 and 844 "are governed by similar principles of law and for many purposes the cases applying one or the other of the statutes may be interchangeably cited." (*People* v. *Peterson* (1973) 9 Cal.3d 717, 722, fn. 7 [108 Cal.Rptr. 835, 511 P.2d 1187].)

■ The People concede that Officer Gilbert's actions in entering the residence did in fact constitute a "breaking" within the meaning of Penal Code section 1531 and that there was no literal compliance with the provisions of the section. The People contend, however, that there was substantial compliance with the provisions of Penal Code section 1531, which is all that the law requires. (See *Peterson, supra,* 9 Cal.3d 717.)

■ In speaking about the underlying rationale of Penal Code section 844, the companion section to Penal Code section 1531, the court in *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628], stated: "The purposes and policies underlying section 844 are fourfold: (1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder."

■ The basis of the People's contention—that there was substantial compliance with section 1531—is predicated on the asserted principle that where the searching police officer and the resident of the house enter

---

[1]Penal Code section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

together, there is no requirement of a notification to occupants of the police officer's authority and purpose which is a prerequisite to a breaking and entering upon a refusal of the occupants to admit the officer.

Defendant asserts that, under the facts of the instant case, there was neither a literal nor substantial compliance with the provisions of Penal Code section 1531; that such noncompliance made the search and seizure of contraband and the arrest of defendant invalid and, therefore, justified the trial court's order setting aside the information.

The People rely on *People* v. *Kanos* (1971) 14 Cal.App.3d 642, 652 [92 Cal.Rptr. 614], in which the court stated: "The doctrinal bases of section 844 and section 1531 of the Penal Code, which imposes the same requirements for execution of a search warrant, are reverence of the law for the individual's right of privacy in his house and discouragement of situations conducive of violence. [Citation.] These policies do not apply where, as here, the resident of the house enters with the authorities. [Citation.] This should be particularly true when the resident has informed them that no one is inside."

In *Kanos,* the defendant was a parolee who had violated his parole conditions. The officers *knew defendant Kanos* and arrested him outside of his house. There was no doubt about his identity and the officers inquired whether anyone was in the house before entering with defendant.

*Marts* v. *Superior Court* (1975) 49 Cal.App.3d 517 [122 Cal.Rptr. 687], is similar to *Kanos* in that Marts, a parolee, was known to the officers and accompanied them in his house, the entry to which was for the purpose of conducting a search.

As authority for its statement that Penal Code sections 844 and 1531 do not apply where officers enter a residence with the resident, *Kanos* cites *People* v. *White* (1969) 270 Cal.App.2d 680 [76 Cal.Rptr. 104]. The statement is made in *White* that "Penal Code, section 844 does not apply where officers enter a residence with the resident." (*Id.,* at p. 682.) *White* cites no authority for this statement. Factually, however, *White* is like *Kanos* and *Marts* in that the officers knew the person who entered the home with them.

The *Kanos, White* and *Marts* cases are not persuasive authority for holding that Penal Code sections 844 and 1531 do *not* apply where the

officer enters a residence with a person they have no objective reasonable basis for believing is the resident and they make no effort to determine whether such person is the resident named in the search warrant or whether there are other persons who might be in the residence at the time. This is the situation presented in the case at bench. Thus, *Kanos, White* and *Marts* do not apply to the factual situation before us.

The People argue, however, that the record before us must be construed as a finding by the magistrate at defendant's preliminary hearing that defendant met the description of the person described in the search warrant. It is argued that, even though such a finding is not expressly made, it must be presumed that defendant would in fact fit the stated description of the suspect. The People point out that in *People* v. *Sandoval* (1966) 65 Cal.2d 303, 307 [54 Cal.Rptr. 123, 419 P.2d 187], the court stated: "The record contains no description of defendant, but we must assume, in support of the judgment, that the defendant fit the description supplied by [the informant]." In similar fashion, it is said in *People* v. *Anthony* (1970) 7 Cal.App.3d 751, 763 [86 Cal.Rptr. 767], that "[a]lthough [the officer] apparently did not testify that defendant's appearance matched the description of the robber, we presume in support of the trial court's decision that it did."

■ The People's argument is misdirected. Although defendant Hill might well have met the description of the suspect set forth in the search warrant, it is obvious that, with the large number of blacks living in the particular area of Los Angeles involved, hundreds, and possibly thousands, of persons fit the *generalized* description of the suspect set forth in the search warrant. We fail to see how any police officer of the Los Angeles Police Department could reasonably and in good faith believe that the defendant whom he saw in the backyard of the premises on 98th Street (or 90th Street) was the person described in the search warrant, in light of the fact that possibly thousands of others would likewise fit the same description.

Assuming that defendant's nonanswer to the question: Is your name Frank, could be reasonably taken by the police to be an affirmative answer, still the officers had not yet ascertained that he was the person they were looking for. Frank is not an uncommon name. To hold otherwise would subject every black man with that first name, otherwise unidentified, to arrest under as vague a warrant as existed here.

That the officer did *not* in fact reasonably believe that defendant Hill was the suspect named in the search warrant is indicated from the officer's testimony that he asked the suspect if he were Frank. But it is significant that Officer Gilbert did *not* testify that he received any reply, but, without waiting for a reply, immediately proceeded to act on the erroneous assumption that defendant was the suspect, "Frank," described in the warrant.

To sustain the trial court's order of dismissal, defendant relies upon *People* v. *Buckner* (1973) 35 Cal.App.3d 307 [111 Cal.Rptr. 32], in which the police officers, who were acquainted with a resident of certain premises, arrested him outside of the residence as he came out of the front door. Other officers then entered the residence without announcing their presence or demanding admittance or explaining the purpose for which admittance was desired. The resident who was first arrested was then taken back into the house. *Buckner* held that there had been a violation of Penal Code section 844, even though the officers entered through an *open* door, since there was no announcement of purpose or request for admittance.

The *Buckner* court stated that "[t]he presence or absence of an open door does not affect the degree of privacy which the state is bound to afford an individual in his home. [Citations.]" (See *Buckner, supra,* 35 Cal.App.3d 307, 313.) The *Buckner* court also stated that "[c]ompliance with the provisions of section 844 prior to entry, under the facts of the instant case, would have resulted in a decrease in the peril to the officers and would not have frustrated the arrests, nor resulted in the destruction of evidence. [Citation.] Thus, any evidence obtained as a result of the illegal entry in violation of this statute must be excluded. [Citations.]" (*Id.,* at p. 315.)

■ Defendant asserts that there was no more substantial compliance with Penal Code section 1531 in the case at bench than there was with Penal Code section 844 in *Buckner.* We agree. The record is devoid of any evidence that Officer Gilbert or any of his companion officers identified themselves as police officers demanding admittance into the residence or that any officer made any effort, prior to entry, to communicate to any persons who might have been inside the dwelling or the separate structure to the rear of the residence that the officers sought admittance to discharge their duties as police officers. The officers in the instant case had no basis for assuming that the residence was vacant and that there were no persons on the inside. Forcing defendant, whom

Officer Gilbert did not reasonably know was the occupant, to accompany him into the residence without complying with the requirements of section 1531, cannot be considered as substantial compliance with the section.

In *Kanos, White* and *Marts,* the cases on which the People rely, not only did the police know, of their own knowledge, that the person who escorted them into the house was a resident, but they also could reasonably believe that the house was then unoccupied. Here, for all the police knew, there could well be other people in the house who could misinterpret the officer's entry and resist with violence. We conclude that these factors support the trial court's order.

We hold that there was neither literal nor substantial compliance with Penal Code section 1531. This noncompliance thus vitiated "the lawfulness of the arrest and subsequent search and required exclusion of the evidence obtained in that search. [Citations.]" (*People* v. *Bradley* (1969) 1 Cal.3d 80, 89 [81 Cal.Rptr. 457, 460 P.2d 129]; fn. omitted.)

The order from which the appeal has been taken is affirmed.

Files, P. J., and Kingsley, J., concurred.