[Crim. No. 36908. Second Dist., Div. Two. Dec. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
HARRY CONTRERAS VALDIVIA, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Richard A. Curtis, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROTH, P. J.**—As the result of a "plea bargain" effected by means of a submission upon the transcript of his preliminary hearing (see *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473]), defendant Harry Valdivia was convicted of possessing heroin (Health & Saf. Code, § 11350).[1] He appeals from the judgment (order granting probation) seeking review of the superior court's order denying his motion to suppress the proofs of his guilt.

Uncontroverted evidence[2] established that officers of the Ventura County Sheriff's Department learned that appellant was conducting narcotic sales activities at his residence and communicated this information to his parole agent, Lynn Brookhouser.

On June 12, 1979, Brookhouser and several officers went to appellant's residence around noon to conduct a parole search, anticipating appellant would be there at that time. As Detective Ronald Russell approached its front door he said "[p]olice officer" in a voice "loud enough so anyone in the residence could hear [him]." He was the first officer to reach the door itself and found it to be standing wide open.[3] From his vantage point outside he could see virtually all of the living room and kitchen area and observed them to be unoccupied. Nevertheless, he again announced his identity as he stepped over the threshold.

After his entry Detective Russell noticed he was alone and waited for other officers to enter. When two others had joined him, they knocked at each of three closed inner doors, announcing their identity and stating they had come to conduct a parole search. Receiving no response, the officers opened these doors, which led to a bathroom, bedroom and closet. Although, in fact, no one was present in the premises, heroin and some narcotics paraphernalia were recovered, primarily in the bedroom.

In contending the trial court erred in denying his suppression motion, appellant argues that "[w]here police, accompanied by a parole officer

---

[1] The information had charged possession of heroin for sale.

[2] At the hearing on appellant's motion to suppress, the parties stipulated the trial court might receive and consider the preliminary hearing transcript as well as the additional evidence presented during those proceedings.

[3] Charlene Villa, who resided with appellant, was sitting on the front lawn eight to ten feet from the front door when Detective Russell arrived. She was apparently arrested by other officers, but was not immediately taken inside.

for the purpose of conducting a parole search, entered appellant's apartment through the open front door stating only 'police' as they entered, there was no substantial compliance with knock-notice requirements; nor was compliance excused where the officer's belief that arrest would be resisted and evidence disposed of was based only on 'street talk' that appellant would not 'go down' without taking someone with him and on the officer's general experience that narcotics violators tend to attempt to dispose of evidence."

■ Although we agree, as did the trial court, that neither unsubstantiated "street talk" nor the known propensity of narcotics violators to quickly dispose of contraband excuses compliance with so-called "knock-notice" requirements (*People* v. *Dumas* (1973) 9 Cal.3d 871, 878-879 [109 Cal.Rptr. 304, 512 P.2d 1208]), nonetheless appellant's motion to suppress was properly denied.[4]

The announcement requirements of Penal Code sections 844 and 1531 are but *partial* codifications of existing common law rules designed to protect fundamental rights that would be applicable in any event. (*People* v. *Rosales* (1968) 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489].) To that extent these sections, like the judicially created rules themselves, serve to minimize the possibility of violent resistance to unannounced or unexplained entries by officers into private dwellings and to protect the security of innocent persons who may also be present on the premises. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 87 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Lopez* (1968) 269 Cal.App.2d 461, 467-468 [74 Cal.Rptr. 740].)

---

[4]Appellant's repeated citations to Penal Code section 844 are technically inappropriate. Since the officers proceeded to appellant's residence to conduct a parole search, rather than to make an arrest, their position was similar to that of officers acting under Penal Code section 1531. (*People* v. *Ford* (1975) 54 Cal.App.3d 149, 154 [126 Cal.Rptr. 396].) However, for most purposes, the provisions of both sections are governed by similar policy considerations. (*People* v. *Peterson* (1973) 9 Cal.3d 717, 722, fn. 7 [108 Cal.Rptr. 835, 511 P.2d 1187]; *People* v. *Hill* (1978) 80 Cal.App.3d 879, 883 [146 Cal.Rptr. 1].)

Penal Code section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

*On their faces*, however, sections 844 and 1531 are principally directed *to the additional and secondary function* of affording a homeowner the opportunity to avoid needless damage to his property by voluntarily cooperating with police officers in the performance of their authorized duties. Contrary to the assumption frequently found in defense arguments, officers complying with the requirements of these sections are not *seeking* a resident's *consent* or *permission* to enter or search. *Their authority* to perform these functions *is a preexisting one* derived from some other legal source. Although the occupant of the premises has a pragmatic ability to do so, he *has no right to refuse* the officers admittance. If he declines to voluntarily comply with their lawful demands after being afforded an opportunity to do so, they may break windows, doors, etc., in the course of performing their duties.[5]

Both common law and statutory objectives were satisfied in the instant case, notwithstanding Detective Russell's failure to completely comply with the announcement requirements prior to entering appellant's residence. As the court correctly noted, the officer did announce his identity prior to entry even though there was no one in the living room or kitchen area whose privacy was threatened and there existed no immediate risk of a violent confrontation. Moreover, of course, because the front door was open no damage to property occurred or was threatened at that juncture. Once the officers had moved to those areas that were closed to view, they knocked at each door, announced their identity and fully explained their purpose before entering, thereby complying with both the spirit and the letter of the common law rules themselves as well as our Legislature's supplementary codifications thereof.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied January 26, 1981, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied February 25, 1981.

[5]This aspect of the sections is most apparent in Penal Code section 1531 which refers to "inner doors," "parts of a house or anything therein," as well as to an occupant's precedent refusal. By way of example, a homeowner walking about with officers conducting a search of the premises should be given the opportunity to open his locked closets, kitchen cabinets, dresser drawers, etc., before they are forced open, even though ordinarily there would be no reason for an officer to knock on such small enclosures and again announce his identity in order to avoid the possibility of a startling confrontation.