[No. D003382. Fourth Dist., Div. One. July 16, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDOLF FLORES FRANCO, Defendant and Appellant.

COUNSEL

Richard Targow, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert M. Foster, Jay M. Bloom and Gil Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KREMER, P. J.**—Rudolf Flores Franco appeals jury convictions for possessing heroin for sale, possessing heroin and possessing drug paraphernalia arguing critical evidence underlying his convictions should have been suppressed because officers failed to give notice of their presence before entering his hut. (Pen. Code,[1] § 844.) We agree and reverse.

FACTS

About 6:30 a.m. on August 30, 1984, Police Officer Larry Johnson and several other law enforcement officers went to 3471 Jefferson Street in Carlsbad to serve Rudolf Flores Franco with an arrest warrant for violating probation. The officers found three separate structures at this address: the main residence, a garage converted into a residence and a hut constructed of plywood, chicken wire, pieces of carpet and other material. The hut, approximately 10 feet long by 10 feet wide by 4 feet tall, was completely enclosed and had one wall adjoining the converted garage. The door to the hut was a blanket or drape. Based on information by an informant, Officer Johnson believed Franco was living in this hut.

Johnson went directly to the hut expecting to find Franco sleeping there. Without announcing himself or demanding admittance, Johnson opened the drape. Seeing Franco and his son inside, Johnson identified himself as a police officer. From where Johnson was standing at the hut's entrance, he saw numerous broken balloon bindles and a hypodermic syringe inside the hut. Johnson then entered the hut and found more balloons containing a light brown substance, several syringes and needles, and a wallet containing Franco's identification and $530 in cash.

Franco was charged with possessing heroin for sale (Health & Saf. Code, § 11351), possessing heroin (Health & Saf. Code, § 11350) and possessing

---

[1]All statutory references are to the Penal Code unless otherwise specified.

drug paraphernalia (Health & Saf. Code, § 11364). Before trial, Franco asked the court to suppress the evidence (§ 1538.5) on the grounds the officers failed to comply with the knock-notice requirement of section 844. The court denied Franco's request, finding the hut where Franco was sleeping was not a house or residence subject to the knock-notice rule of section 844. Alternatively, the court found even if section 844 applied, the officers substantially complied with the statute when "upon seeing Mr. Franco inside . . . to then announce their purpose, identification, and that they have a warrant for his arrest."

A jury convicted Franco on all three counts. The court sentenced him to prison for the upper term of four years on the possession of heroin for sale count and the upper term of three years, stayed pursuant to section 654, on the possession of heroin count. The court dismissed the possession of paraphernalia count. Franco appeals.

## DISCUSSION

Franco contends the evidence found in the hut should have been suppressed because the officers failed to comply with the knock-notice rule of section 844. Specifically, Franco asserts the court erred in finding the hut was not a house within the meaning of section 844. He further asserts the court erroneously found the officers substantially complied with the knock-notice requirement.

### A.

■ Section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired." This section was enacted to protect the fundamental right of privacy of those searched or arrested in a dwelling and to insure the safety of the police, innocent bystanders and occupants who may be injured as a result of violent resistance to unannounced entries. (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628]; *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 291-293 [78 Cal.Rptr. 504, 455 P.2d 432].)

"Traditionally, such protection has extended territorially not merely to the home itself, but also at least to the subsidiary outbuildings upon the same lot. [Citations.]" (*People* v. *Hobbs* (1969) 274 Cal.App.2d 402, 406

[79 Cal.Rptr. 281], fn. omitted.)[2] Thus, garages and other outbuildings on residential property lie within the scope of a reasonable expectation of privacy, enjoy the same constitutional protection as the residence itself, and accordingly are subject to the same knock-notice requirements as a residence. (See *People* v. *Bruce* (1975) 49 Cal.App.3d 580, 585-587 [122 Cal.Rptr. 648] [entry into detached garage violated section 844]; *People* v. *Superior Court (Arketa)* (1970) 10 Cal.App.3d 122, 126-127 [89 Cal.Rptr. 316] [entry into detached shed held illegal].)

The People cite *People* v. *Muriel* (1968) 268 Cal.App.2d 477, 480 [74 Cal.Rptr. 44] and *People* v. *Murray* (1969) 270 Cal.App.2d 201, 204 [75 Cal.Rptr. 625], for the proposition section 844 does not apply to structures such as a garage. However, in those cases, the garage in question was not constitutionally protected because it had no private character and there was no evidence it was used for the comfort and convenience of those of the household. Here, in contrast, the hut in which the officers found Franco was on the same residential property as the two main dwellings and was adjacent to one of them. (See *People* v. *Hobbs, supra,* 274 Cal.App.2d at p. 406.) Officer Johnson knew Franco was living in this hut and went directly there to arrest him, knowing he was likely to be inside sleeping. Although this hut may not be a "house" in the traditional sense, Franco was using it as his residence[3] so that it was entitled to be regarded as an outbuilding essential to his comfort and personal well-being and therefore, entitled to the protection of the Fourth Amendment. (See *People* v. *Shields* (1965) 232 Cal.App.2d 716, 721 [43 Cal.Rptr. 188].)

The appropriate test of constitutional protection "is whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion." (*People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].) The hut here was completely enclosed and private. Franco lived in it, or at a minimum, used it as sleeping quarters, thus exhibiting a reasonable expectation of privacy. The fact the structure was only four feet high and had no bathroom or kitchen facilities "does not affect the degree of privacy which the state is bound to afford an individual in his home." (*People* v. *Buckner* (1973) 35 Cal.App.3d 307, 313 [111 Cal.Rptr. 32].) Moreover, the size and quality of the structure have no bearing on the potential for violent confrontations between occupants and police officers due to an unannounced entry. (See *Greven* v. *Superior Court, supra,* 71

---

[2]The court in *Hobbs* held a detached garage was within the protection of the Fourth Amendment to the United States Constitution and article I, section 19 of the California Constitution.

[3]Officer Johnson testified the hut contained a fold-out type bed, some shelves, boxes, and a lot of clothing.

Cal.2d at pp. 292-293; *People* v. *Rosales* (1968) 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489].) Consistent with the policy considerations of section 844, we conclude the hut here is a house within the meaning of section 844 and therefore was subject to the knock-notice rule.

## B.

■ Section 844 requires police officers "(1) to knock or utilize other means reasonably calculated to give adequate notice of their presence to the occupants, (2) to identify themselves as police officers, and (3) to explain the purpose of their demand for admittance. [Citations.]" (*Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 319.) Announcement of identity and purpose must be made outside the dwelling before entry, not inside or as the officers are crossing the threshhold.[4] (*People* v. *Keogh* (1975) 46 Cal.App.3d 919, 927 [120 Cal.Rptr. 817].) Having determined Franco's hut was a dwelling subject to the requirements of section 844, we must next decide whether the officers substantially complied with the statute.

"Under the doctrine of 'substantial compliance' the requirements of section 844 will be deemed satisfied where police officers identify themselves, demand entry and, although they fail to explain why they seek admittance, it is reasonably apparent to the occupants why the police wish to enter. [Citations.]" (*People* v. *Hill* (1974) 12 Cal.3d 731, 758 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].) Thus, the test of substantial compliance applies only to the explanation of purpose provision of the statute. (*People* v. *Buckner, supra,* 35 Cal.App.3d at p. 314.) Here, the officers neither gave notice of their presence[5] nor identified themselves as police officers before entering the hut.[6] Their failure to do so was not cured by their announcement *after* entering. (See *Garcia* v. *Superior Court* (1973) 29 Cal.App.3d 977, 981 [106 Cal.Rptr. 98].) Accordingly, the officers' manner of entry was unlawful, vitiating the subsequent search and requiring exclusion of the evidence obtained in that search. (See *People* v. *Bradley* (1969) 1 Cal.3d 80, 89 [81 Cal.Rptr. 457, 460 P.2d 129].)

---

[4]Noncompliance with the knock-notice rule is excused only when the officer acts on a reasonable and good faith belief that compliance would frustrate an arrest, increase the officer's peril, or permit the destruction of evidence. (*People* v. *Rosales, supra,* 68 Cal.2d at p. 305.) The People do not argue, nor does the evidence show, noncompliance was excused.

[5]Contrary to the People's assertion, the officers were not excused from "knocking" on the door simply because there was no door. Only adequate notice of the officers' presence, not actual knocking, is required. (See *People* v. *Brownlee* (1977) 74 Cal.App.3d 921, 929 [141 Cal.Rptr. 685] [purpose of "knocking" is to get attention of someone in house].)

[6]By opening the drape that served as a door to the hut, the officers effected a "breaking" within the meaning of section 844. (See *People* v. *Rosales, supra,* 68 Cal.2d at p. 303.)

Because the error in admitting this evidence at trial contributed to the verdict, the judgment must be reversed. (*Chapman* v. *California* (1967) 386 U.S. 18, 21-24 [17 L.Ed.2d 705, 708-711, 24 A.L.R.3d 1065]; *People* v. *Hayko* (1970) 7 Cal.App.3d 604, 608-609 [86 Cal.Rptr. 726].)

## C.

The enactment of California Constitution article I, section 28, subdivision (d) (Proposition 8), does not require a different result. Proposition 8 mandates the admission of relevant evidence if not prohibited by the federal Constitution. (*People* v. *Neer* (1986) 177 Cal.App.3d 991, 998 [223 Cal.Rptr. 555].) An entry effected in violation of the knock-notice requirements of sections 844 and 1531[7] renders any subsequent search and seizure unreasonable within the meaning of the Fourth Amendment and thus requires exclusion of the evidence under *Mapp* v. *Ohio* (1961) 367 U.S. 643, 660 [6 L.Ed.2d 1081, 1093, 81 S.Ct. 1684, 84 A.L.R.2d 933]. (*Jeter* v. *Superior Court* (1983) 138 Cal.App.3d 934, 938 [188 Cal.Rptr. 351], citing *Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 325.) "Since the court rested its holding in *Duke* not on the California Constitution but solely upon the Fourth Amendment to the United States Constitution, the holding is not affected by article I, section 28, subdivision (d) recently added to the California Constitution. . . ." (*Jeter* v. *Superior Court, supra,* 138 Cal.App.3d at p. 938.)

" 'What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled. . . . The people have apparently decided that the exclusion of evidence is not an acceptable means of implementing those rights, *except as required by the Constitution of the United States.* . . .' " (*People* v. *Neer, supra,* 177 Cal.App.3d at p. 998, quoting *In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744], italics added in *Neer.*) Thus, neither Proposition 8 nor the California Supreme Court's holding in *Lance W.* has nullified California cases requiring the exclusion of evidence based on a Fourth Amendment violation such as the knock-notice rule. (See *Greven* v. *Superior Court, supra,* 71 Cal.2d at p. 290; *People* v. *Rosales, supra,* 68 Cal.2d at pp. 304-305.)

---

[7]Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." Sections 1531 and 844 are subject to similar construction. (*Brown* v. *Superior Court* (1973) 34 Cal.App.3d 539, 542 [110 Cal.Rptr. 107].)

## D.

Franco's convictions rest solely on the materials found in the hut and his statement regarding their ownership made shortly after the search. With their suppression, no evidence supports the convictions and they must be reversed.

## DISPOSITION

Judgment reversed.

Staniforth, J., and Butler, J., concurred.