[No. F009625. Fifth Dist. Apr. 5, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ELNORA LEVELS, Defendant and Appellant.

COUNSEL

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Robert C. Miller, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BAXTER, J.—

### FACTS AND PROCEEDINGS BELOW

The Kings County District Attorney filed a complaint against Elnora Levels (appellant) in the Justice Court for the Hanford Judicial District of Kings County on July 26, 1984. Count I alleged that between February 1, 1983, and April 30, 1984, appellant feloniously violated section 11483 of the Welfare and Institutions Code by improperly obtaining aid in excess of $200. Count II alleged that between January 1, 1983, and April 30, 1984,

appellant feloniously acquired food stamps in excess of $200 in violation of Penal Code section 396. Counts III and IV alleged that appellant feloniously violated Welfare and Institutions Code section 11483.5 between October of 1983 and January of 1984.

A plea bargain was announced in open court on October 2, 1984, under which appellant waived her right to a preliminary hearing, and the district attorney agreed to dismiss counts III and IV and recommend probation and custody in the county jail in lieu of state prison if appellant pled guilty to counts I and II. On October 17, 1984, the district attorney filed the information in the Tulare County Superior Court repeating counts I and II from the complaint but deleting counts III and IV.

Appellant executed a written plea declaration on October 27, 1984, in which she acknowledged that each count of the information carried a maximum sentence of three years in state prison and that no promises were made to induce her to plead nolo contendere to both counts except that "[t]he district attorney has promised not to file other potential welfare fraud type charges arising in Kings County. He would also make a non-binding recommendation of local time." Appellant's attorney signed the declaration confirming that he fully explained it to appellant. It was filed with the court on October 29, 1984.

Appellant pled nolo contendere to counts I and II at her arraignment in superior court on October 30, 1984. Prior to accepting her plea, the trial judge fully reviewed the rights she would give up by pleading nolo contendere and made the following statement regarding punishment: "Q  [the court]  And you understand that the District Attorney's recommendation is not binding on this Court and that the maximum possible punishment for both of these counts is up to three years in the state prison and that it would be . . . theoretically possible that you could be sentenced on these counts consecutive to one another which would mean that the maximum total time in custody on both charges would be three years and eight months in the state prison; do you understand that? [¶] A  [appellant]  Yes."

The trial judge specifically asked, "Are you pleading no contest because in truth and in fact you commited [*sic*] these offenses?" Appellant's response was "Yes."

After appellant's attorney stated that he concurred with her intention to plead nolo contendere to both counts, the trial court took her plea as follows: "THE COURT:  All right. How do you plead then to Count I of the information which charges that between February 1983 and April 1984 in the Hanford Judicial District you did by means of false statements and

representations obtain aid for a child not in fact entitled thereto in excess of $200.00 and in violation of Section 11483 of the Welfare and Institutions Code?

"THE DEFENDANT: No contest.

"THE COURT: All right. How do you plead to Count II of the information which charges that between the same dates you violated Penal Code Section 396 in that you did knowingly, unlawfully, and feloniously use, acquire, and transfer or possess food stamps or authorization to purchase food stamps in a manner not authorized by the law in excess of a value of $200.00?

"THE DEFENDANT: No contest.

"THE COURT: All right. Are you in agreement that Mr. Packenham state a factual basis or state what you did so that I will have—

"THE DEFENDANT: Yes."

Appellant's attorney then stated that appellant received aid in the form of cash grants and food stamps during the period in question as a result of having applied for aid on behalf of nonexistent grandchildren. Appellant and the People expressed satisfaction with the statement, and the court found that there was a factual basis for the pleas and then accepted appellant's pleas of nolo contendere to both counts of the information.

Appellant appeared for sentencing on November 26, 1984. Defense counsel had no additions or corrections to make to the probation report. The trial judge noted that this was as sophisticated a welfare fraud case as he had ever seen and mentioned that appellant used forged birth certificates to claim aid from two counties at the same time for four nonexistent grandchildren.

The court suspended the imposition of sentence for five years and placed appellant on formal probation for that period. Conditions of probation included orders to obey all laws, to serve 210 days in the custody of the sheriff, and to pay the welfare department restitution in the amount of $7,519. Appellant accepted the terms and conditions of probation and agreed to abide by them. After serving a small portion of her 210-day sentence, appellant was released from county jail due to alleged medical problems.

On October 15, 1986, appellant's probation officer filed a report that appellant violated probation in that she fraudulently received over $17,000

in excess aid in 1985 and 1986 from the Fresno County Department of Social Services and was charged with felony welfare fraud in Fresno County.

On September 21, 1987, appellant and her attorney admitted that she violated her probation order to obey all laws by having pled guilty to felony welfare fraud in Fresno County. The trial court, however, noticed that amendments to Welfare and Institutions Code section 11483 and to Penal Code section 396 that took effect on January 1, 1984, increased the felony threshold from an amount in excess of $200 to an amount in excess of $400. Because of uncertainty over the amendments' legal consequences, the trial court did not accept appellant's admission at that time and continued the hearing for receipt and review of legal points and authorities.

On October 22, 1987, the trial court held its hearing to determine whether appellant had violated her probation. The trial court gave appellant the opportunity to withdraw her 1984 pleas, noting that there were problems with the pleas she entered. Appellant declined this opportunity and maintained for the first time that she had only pled nolo contendere to misdemeanors.

The court took a waiver of appellant's constitutional rights and found her in violation of probation based on the stipulation of appellant, her attorney, and the district attorney that she had pled guilty to felony welfare fraud committed in 1985 and 1986 in Fresno County.

The trial court held a sentencing hearing on December 14, 1987. The court rejected appellant's argument that she had only pled nolo contendere to misdemeanors in 1984 citing *People* v. *Ellis* (1987) 195 Cal.App.3d 334 [240 Cal.Rptr. 708]. The trial court sentenced appellant to state prison and imposed concurrent terms of two years for violation of Welfare and Institutions Code section 11483 and three years for violation of Penal Code section 396, noting that this was the midterm for each statute. The trial court gave appellant credit for time served and ordered restitution of $7,519. Appellant filed a timely notice of appeal.

Appellant raises three issues on appeal. First, she contends that she could not be sentenced for a violation of Penal Code section 396 because that section was repealed before her sentence was imposed. Second, that the superior court did not have subject matter jurisdiction to sentence her for a felony. Third, that the correct midterm sentence for a violation of Penal Code section 396 is two years and not three years.

## Discussion

### I.

*Did Repeal of Penal Code Section 396 Preclude the Court From Sentencing Thereon?*

■ Appellant contends that by the time she was sentenced for violation of probation in December of 1987 that Penal Code section 396 was repealed. She argues that the common law rule of abatement which prohibits a prosecution based upon a repealed statute precludes punishment under section 396. (See *People* v. *Rossi* (1976) 18 Cal.3d 295, 299-304 [134 Cal.Rptr. 64, 555 P.2d 1313].)

Government Code section 9608 provides that prosecution for criminal acts is not barred where the act is committed before the law is repealed.[1]

The *Rossi* case held that Government Code section 9608 does not entirely abrogate the abatement rule. It merely prevents the mechanical application of abatement where repeal of a statute is clearly not intended as a pardon for past conduct. (18 Cal.3d at pp. 299-300.)

■ Where a statute is reenacted in substantially the same form as an earlier version, no savings clause is necessary because reenactment rebuts the presumption that repeal was meant as a pardon. This is so even though the reenacted law increases or decreases the amount of punishment. (*People* v. *Alexander* (1986) 178 Cal.App.3d 1250, 1265 [224 Cal.Rptr. 290].)

Welfare food stamp fraud was proscribed by Penal Code section 396 as part of the Welfare Reform Act of 1979. As passed, Penal Code section 396 provided in relevant part that: "Whoever knowingly uses, transfers, acquires, or possesses food stamps or authorizations to participate in the federal Food Stamp Program in any manner not authorized by Chapter 10 (commencing with Section 18900), Part 6, Division 9 of the Welfare and Institutions Code or by the Food Stamp Act of 1964 (Public Law 88-525 and all amendments made thereto) is guilty of a misdemeanor if the face value of the food stamps or the authorizations to participate is two hundred dollars ($200) or less; or is guilty of a felony if the face value of the food stamps or the authorizations to participate exceeds two hundred dollars

---

[1] Government Code section 9608 provides: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law."

($200), or if the cumulative face value of the food stamps used, transferred, acquired, or possessed in such manner over any period no longer than two years exceeds two hundred dollars ($200)." (Stats. 1979, ch. 1170, § 3, p. 4561.)

Penal Code section 396 was amended in 1983 (effective Jan. 1, 1984) to increase the dollar amount necessary to constitute felonious welfare fraud from amounts in excess of $200 to amounts in excess of $400. In relevant part, Penal Code section 396 stated: "Section 396 of the Penal Code is amended to read:

"396.   Whoever knowingly uses, transfers, acquires, or possesses food stamps or authorizations to participate in the federal Food Stamp Program in any manner not authorized by Chapter 10 (commencing with Section 18900), Part 6, Division 9 of the Welfare and Institutions Code or by the Food Stamp Act of 1964 (Public Law 88-525 and all amendments made thereto) is guilty of a misdemeanor if the face value of the food stamps or the authorizations to participate is four hundred dollars ($400) or less; or is guilty of a felony if the face value of the food stamps or the authorizations to participate exceeds four hundred dollars ($400), or if the cumulative face value of the food stamps used, transferred, acquired, or possessed in such manner over any period no longer than two years exceeds four hundred dollars ($400)." (Stats. 1983, ch. 1092, § 282, pp. 4042-4043.)

██   Penal Code section 396 was operative throughout 1984, the year the defendant originally pled guilty to violating that section. In 1984, Penal Code section 396 was repealed effective January 1, 1985. Section 396 was, however, substantially reenacted as Welfare and Institutions Code section 10980. Subdivision (c) of the newly enacted section was substantially similar to Penal Code section 396. Welfare and Institutions Code section 10980, subdivision (c) provided as follows: "(c)   Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained or retained aid under the provisions of this division for himself or herself or for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows: [¶] (1)   If the total amount of such aid obtained or retained is four hundred dollars ($400) or less, by imprisonment in the county jail for a period of not more than six months, a fine of not more than five hundred dollars ($500), or by both such imprisonment and fine.

"(2)   If the total amount of such aid obtained or retained is more than four hundred dollars ($400), by imprisonment in the state prison for a period of 16 months, two years, or three years, a fine of not more than five thousand dollars ($5,000), or by both such imprisonment and fine; or by

imprisonment in the county jail for a period of not more than one year, or a fine of not more than one thousand dollars ($1,000), or by both such imprisonment and fine." (Stats. 1984, ch. 1448, § 2, pp. 5075-5076.)

Welfare and Institutions Code section 10980 was amended in 1985 without any change to subdivision (c). (Stats. 1985, ch. 568, § 1, pp. 2072-2073.)

Welfare and Institutions Code section 10980 was enacted in substantially the same form as Penal Code section 396 had been. Both statutes proscribed the same activity. Before Penal Code section 396 was repealed, it had been amended to punish as a felony all welfare fraud in excess of $400. Welfare and Institutions Code section 10980 retained this requirement. Furthermore, the penalties for felonious violations of section 396 remained the same when it was reenacted as Welfare and Institutions Code section 10980.[2]

Even under the common law abatement rule, an exception existed where a statute was repealed and reenacted in substantially the same form as before. In conjunction with Government Code section 9608, this exception operates to protect appellant's nolo contendere pleas to Penal Code section 396 from abatement. This is especially true where the conduct *and* the nolo contendere pleas occurred before repeal and reenactment of the statute. This ground for appeal is rejected.

II.

*Were Appellant's Nolo Contendere Pleas to Felonies Valid?*

A. *Subject Matter Jurisdiction.*

■ Appellant's primary contention on appeal is that her judgment of conviction is void because the "felony" counts she pled nolo contendere to in 1984 were in fact misdemeanors. She contends the superior court does not have subject matter jurisdiction over misdemeanors and, since it cannot be conferred by waiver, stipulation or estoppel, the judgment against her was a nullity. (*In re Griffin* (1967) 67 Cal.2d 343, 346 [62 Cal.Rptr. 1, 431 P.2d 625]; *Griggs* v. *Superior Court* (1976) 16 Cal.3d 341, 344, fn. 2 [128 Cal.Rptr. 223, 546 P.2d 727]; *People* v. *Webb* (1986) 186 Cal.App.3d 401, 411 [230 Cal.Rptr. 755].)

---

[2] Penal Code section 396 never had a specific penalty provision. Felonious violations of the section fell under the general provisions of Penal Code section 18 providing for penalties of 16 months, 2 years or 3 years. This sentencing scheme was specifically incorporated into Welfare and Institutions Code section 10980, subdivision (c)(2).

Underlying appellant's contention are 1983 amendments to Welfare and Institutions Code section 11483 and Penal Code section 396, both effective January 1, 1984, increasing the threshold for felony welfare fraud in each section from amounts in excess of $200 to amounts in excess of $400. The legislative history is pertinent.

In 1979, the Legislature amended Welfare and Institutions Code section 11483. In relevant part it read: "11483. Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows: [¶] (1) If the amount obtained or retained is two hundred dollars ($200) or less, by imprisonment in the county jail for a period of not more than six months, a fine of not more than five hundred dollars ($500), or by both such imprisonment and fine.

"(2) If the amount obtained or retained is more than two hundred dollars ($200), by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year." (Stats. 1979, ch. 1171, § 1, p. 4568.)

The Legislature again amended Welfare and Institutions Code section 11483 in 1983 effective January 1, 1984. In relevant part, the newly amended section read as follows: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows: [¶] (1) If the amount obtained or retained is four hundred dollars ($400) or less, by imprisonment in the county jail for a period of not more than six months, a fine of not more than five hundred dollars ($500), or by both such imprisonment and fine.

"(2) If the amount obtained or retained is more than four hundred dollars ($400), by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year." (Stats. 1983, ch. 1092, § 422, p. 4088.)

Penal Code section 396 was amended in similar fashion, as discussed in part I. The effect of the 1983 amendments to Welfare and Institutions Code section 11483 and Penal Code section 396 was to increase the amount necessary to constitute felony welfare fraud from an amount in excess of $200 to an amount in excess of $400 starting January 1, 1984.

The district attorney obviously failed to consider these statutory amendments when the complaint and information were drafted and filed in 1984.

Count I alleged felonious violation of Welfare and Institutions Code section 11483. The amount of aid illegally obtained was allegedly "in excess of $200" and the crime allegedly occurred "on or about the 1st day of February, 1983 through the 30th day of April, 1984." Count II alleged felonious violation of Penal Code section 396. The amount of food stamps illegally obtained was allegedly "in excess of Two Hundred Dollars ($200.00)" and the crime allegedly occurred "on or about January 1, 1983 through April 30, 1984."

The offenses were charged in substantial compliance with Penal Code section 952. It provides: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. . . ."

It is conceded that the allegations are ambiguous and uncertain and are not models to emulate. The critical issue, however, is whether they allege the commission of one or more felonies so as to provide the superior court with subject matter jurisdiction. The allegations on their face are broad enough to encompass felonies. Had it been alleged that she illegally obtained amounts in excess of $200 *in 1983 only,* felonies would clearly have been charged because the amendments to the sections would not apply to criminal conduct committed prior to January 1, 1984. (Gov. Code, § 9608; see fn. 1, *ante.*) The extension of the alleged crime period through April 1984 does not on its face and as a matter of law negate the allegation that the conduct was felonious. The allegations are sufficiently broad to also encompass felonies based on violations of the sections as amended. Had it been alleged that she illegally obtained amounts in excess of $400, felonies would clearly have been charged under the sections as amended. The error in alleging that she illegally obtained amounts in excess of $200 does not on its face and as a matter of law negate the allegation that the conduct was felonious.

Appellant's reliance on *People* v. *Smith* (1964) 231 Cal.App.2d 140 [41 Cal.Rptr. 661] is misplaced. Smith was charged in an information with a violation of section 476a of the Penal Code in that he issued a $50 check without sufficient funds. There was no allegation that he had previously been convicted of any offense. The section expressly provided at the time of the offense in May 1963 that if the checks issued did not exceed $50, the offense was a misdemeanor in the absence of a prior conviction. The court

properly held that the information alleged only a misdemeanor and reversed Smith's conviction because the superior court lacked subject matter jurisdiction. *Smith* is clearly distinguishable from the instant case in that the information on its face and as a matter of law alleged facts encompassing *only* a misdemeanor.

*People* v. *Carter* (1965) 233 Cal.App.2d 260 [43 Cal.Rptr. 440] is more on point. Carter pled guilty to a violation of Penal Code section 459. The factual allegation was that he forcibly entered a vehicle with intent to steal personal property. There was no allegation that the vehicle was locked. Section 459 provides that a vehicle must be locked for the burglary to occur. The court rejected the defendant's contention that a public offense was not stated and thus subject matter jurisdiction did not exist where there was no allegation that the vehicle was locked.

"[T]he complaint does charge a criminal offense even though the draftsmanship . . . leaves something to be desired and an element incorporated into the code section is not specifically set forth. Therefore the emerging question is not one of jurisdiction for a public offense is obviously stated, but of mere ambiguity or uncertainty, which is a waiverable defect. [Citation.] We are satisfied that the offense of burglary is sufficiently charged and that jurisdiction of the court is implicit in the language actually used in the complaint. While it is conceded that a vehicle with all doors unlocked could still be forcibly entered by breaking the glass and entering instead of merely opening a door, the complaint does state that the crime of Penal Code, section 459, has been committed. . . . Defendant entered his plea of guilty without demurrer. He was represented by an attorney and charged with knowledge that he was pleading guilty to the only vehicle violation included in 'the crime of' Penal Code, section 459, which is the entry of a locked vehicle with intent to commit grand or petit larceny. Failure to demur or in any wise question the pleading in either the municipal or superior courts would constitute a waiver of any lack of definition. [Citations.]" (233 Cal.App.2d at p. 264).

It is noteworthy that the ambiguity and uncertainty of the allegations in the instant case were not manifested in any way until September 21, 1987, when appellant and her attorney admitted the violation of felony probation. It was then that the trial court noted the statutory amendments, continued acceptance of the admission tendered, and requested briefs on the matter. The record clearly reveals that up to that point everyone involved considered the charges to be *only* felony charges.

The court had subject matter jurisdiction over the charges contained in the information since the allegations encompassed felony violations of both

sections and were not limited on their face or as a matter of law to misdemeanors. ■ Objections based on ambiguity and uncertainty are waived when they are not raised by demurrer. (Pen. Code, § 1004; *People* v. *Jackson* (1978) 88 Cal.App.3d 490, 500 [151 Cal.Rptr. 688]; *People* v. *Rankin* (1959) 169 Cal.App.2d 150, 158 [337 P.2d 182]; Witkin, Cal. Criminal Procedure (1985 Supp. pt. 1) § 24, pp. 76-77.)

## B. *Waiver.*

■ The trial court correctly relied on *People* v. *Ellis, supra,* 195 Cal.App.3d 334, in ruling that appellant was estopped to deny the validity of her nolo contendere felony pleas to Welfare and Institutions Code section 11483 and Penal Code section 396. In *Ellis,* the defendant, as part of a plea bargain, admitted that a prior conviction for federal bank robbery satisfied California's serious felony statute (Pen. Code, § 1192.7, subd. (c)) for the purpose of sentence enhancement when, as a matter of law, it did not. The court concluded that this was error under *People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736], but further concluded that Ellis was estopped from complaining of the error. The court distinguished between error premised on an excess of jurisdiction versus a lack of fundamental jurisdiction.

"Here, an information was properly filed, and the cause was properly before the trial court. The error was in acceptance of an admission, and imposition of sentence thereon, in circumstances where defendant's prior conviction did not fall within the applicable penal statute [citation] as a matter of law. The trial court acted in excess of its statutory jurisdiction but not in excess of its fundamental jurisdiction. [Citation.] Consequently, we must examine whether defendant is now estopped to complain of the bargain she struck in the trial court. [Citations.]" (*People* v. *Ellis, supra,* 195 Cal.App.3d at p. 343.)

The *Ellis* court addressed the public policy considerations in the estoppel doctrine and noted: "Just as the law has no interest in punishing defendants more severely than has been ordained by the Legislature, the law also has a strong interest in seeing to it that defendants do not unfairly manipulate the system to obtain punishment far less than that called for by the statutes applicable to their conduct. 'To hold otherwise would permit the parties to trifle with the courts,' [citation] thereby bringing disrespect to the judicial system. In addition, in some cases, a consequence of such unfair manipulation may be the premature release into society of previously incarcerated dangerous persons. These concerns are implicated here, where defendant, having admitted commission of an offense (enhancement) in exchange for the People's agreement to forego prosecution of counts and to a limitation

of sentence, now seeks to strike a majority of the years of her sentence." (195 Cal.App.3d at p. 345, fn. omitted.)

The California Supreme Court's recent decision in *People* v. *Toro* (1989) 47 Cal.3d 966 [254 Cal.Rptr. 811, 766 P.2d 577] provides additional support for the proposition that appellant waived any right to invalidate her felony pleas. In *Toro,* the defendant was charged with attempted murder and assault with a deadly weapon for having stabbed his half-brother. Without a request from the defendant, the trial court instructed the jury and provided verdict forms on the lesser related offense of battery with serious bodily injury. The jury found the defendant guilty of this lesser related offense. (47 Cal.3d at pp. 972-973.)

*Toro* contended on appeal that the trial court committed reversible error in instructing on an uncharged lesser related offense not requested by the defendant. The Supreme Court held that the defendant's failure to object to the trial court's instruction and verdict form for battery with serious bodily injury constituted implied consent to the jury's consideration of the lesser related offense and a waiver of any procedural due process objection based on lack of notice. (47 Cal.3d at pp. 975-978.)

We find *Toro*'s reasoning applicable to this appeal. In the instant case, appellant never demurred or objected in any way to the charges in the information. Appellant and her attorney, the district attorney, the trial judge, the probation officer and everyone else involved in this case treated the charges as being only felony charges until October 22, 1987, when the probation violation hearing was held. It was then that appellant first maintained that she had unexpectedly pled nolo contendere to only misdemeanors. The record clearly establishes appellant's express and implied consent to treat the charges in the information as felonies.

On October 22, 1987, the appellant rejected the trial court's offer to allow her to withdraw her nolo contendere pleas. She does not raise the issue of her right to withdraw her pleas on appeal. ■ Her rejection of the trial court's offer and her failure to raise the issue on appeal constitute a waiver of this issue.

We conclude that the trial court had subject matter jurisdiction to accept appellant's nolo contendere pleas to the two felonies charged in the information and, further, that appellant waived any right to deny their validity under *Ellis* and *Toro.*

### DISPOSITION

The parties agree that the correct midterm sentence for a violation of Penal Code section 396 is two years. The judgment is modified to reduce the

appellant's sentence for violation of Penal Code section 396 from three years to two years. Upon issuance of the remittitur, the superior court shall prepare its abstract of judgment accordingly and forward it to the appropriate authorities. (*People* v. *Jackson* (1981) 117 Cal.App.3d 654, 659-660 [172 Cal.Rptr. 856].)

As so modified, the judgment is affirmed.

Martin, Acting P. J., and Hamlin, J., concurred.