[No. F009554. Fifth Dist. Aug. 8, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL SCOTT RAMSEY, Defendant and Appellant.

COUNSEL

Chain, Younger, Lemucchi, Noriega, Cohn, Stiles & Rodriguez and Frank Butkiewicz for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ARDAIZ, J.—In April 1987 a preliminary hearing was conducted in appellant's case. Appellant made a motion to suppress evidence pursuant to

Penal Code section 1538.5[1] alleging that evidence was seized in violation of the knock-notice requirements of section 1531. The motion was denied and appellant was held to answer.

On May 14, 1987, an information was filed charging appellant with one count of possession of methamphetamine for purposes of sale (Health & Saf. Code, § 11378) and one count of possession of marijuana for sale (Health & Saf. Code, § 11359). It was further alleged appellant possessed 28.5 grams or more of methamphetamine within the meaning of section 1203.073, subdivision (b).

On May 15, 1987, appellant was arraigned, pleaded not guilty and denied the special allegation.

On July 13, 1987, appellant's section 1538.5 motion to suppress evidence and his section 995 motion were denied, and on August 20, 1987, this court denied the petition for writ of mandate. (*Ramsey* v. *Superior Court,* F008995.)

On September 23, 1987, appellant pleaded guilty as charged and was sentenced to three years in state prison. A timely notice of appeal was filed.

FACTS

At the preliminary hearing, Deputy Sheriff Conny Ericsson of the Kern County Sheriff's office testified that on February 25, 1987, at approximately 2:30 p.m., he and several other law enforcement officers arrived at the premises of 5909 Webb Way, Bakersfield, California, for purposes of serving a search warrant. While the other officers were standing around the corner so that they could not be seen, Deputy Ericsson, dressed in plain clothes, walked up to the door and rang the doorbell.

After the second ring, Denise Ramsey opened the door. Ericsson identified himself as "Eric" and asked if Mike was home. Denise said he was sleeping. At that point, Deputy Stevens, who was wearing a vest with a sheriff's badge, walked up behind Ericsson.

Ericsson's preliminary hearing testimony as to the subsequent events is somewhat ambiguous, giving rise to the issue before us. On direct examination, he testified as follows: "A.   I first rang the doorbell and Mrs. Ramsey answered the door, and I asked for Mike. She told me that he was asleep. I was waiting for the other deputies that were with me to walk up behind me,

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

and about that time I saw Deputy Stevens behind me, *and that's when I told Mrs. Ramsey that I had a search warrant for the premises.*

". . . . . . . . . . . . . . . . . ."

"Mr. Pelton [Prosecutor]: Q. Did you, *after explaining that you had a search warrant* for the premises and identifying yourself as a sheriff's deputy, *did you enter the premises?*

"A. *Yes, I did.*" (Italics added.) However, on cross-examination, Ericsson testified as follows: "Q. Going back to the incident involving the search of the Ramsey residence, when you were there, you were dressed in plainclothes; is that right?

"A. That's correct.

"Q. Were the other deputies that were present in uniform or some of them also in plainclothes?

"A. Also in plainclothes, with vests on that says [*sic*] Sheriff on it, and badges on the front.

"Q. Did you have that vest on and the badge?

"A. No, I didn't.

"Q. As you arrived at the residence, you walked up to the door dressed in this undercover capacity; is that right?

"A. Yes.

"Q. And you rang the doorbell, right?

"A. Yes.

"Q. According to the report, it says that, 'After the second ring, Denise Ramsey answered the door.' Is that correct?

"A. That's correct.

"Q. And that's what happened; is that correct?

"A. Yes.

"Q. You asked Mrs. Ramsey if Mike was home, and she told you that he was asleep; is that correct?

"A. Yes.

"Q. According to your report, you told her that your name was Eric; is that correct?

"A. Yes.

"Q. Your name is not Eric, though, right?

"A. No.

"Q. You lied to her, right?

"A. Yes.

"Q. *And at that point, or at least according to your report, you said at that point, 'I observed Senior Deputy Stevens walk up behind me,' and you told Denise you were from the sheriff's department, and that you had a search warrant for the premises; is that correct?*

"A. *That's correct.*

"Q. *And that's what happened, right?*

"A. *Yes.*

"Q. *According to your report, as you were telling Mrs. Ramsey this, you walked by her and down the hallway towards the master bedroom, right?*

"A. Yes.

"Q. And that's what happened, right?

"A. Yes." (Italics added.)

Officer Ericsson further testified that he entered the master bedroom where appellant was sleeping. He woke appellant, advised appellant that he was from the sheriff's department and that he had a search warrant. A subsequent search resulted in seizure of various items of contraband.

Appellant was held to answer and on July 13, 1987, the court denied his section 1538.5 motion based on the evidence contained in the transcripts of the preliminary hearing. The issue herein turns on the alleged inconsistency in the testimony of Officer Ericsson as to whether he announced that he had a search warrant before or after he entered. The issue to be addressed is whether the magistrate made findings pursuant to section 1538.5, subdivision (i), and whether those findings are binding on review with respect to the validity of the search.

I

*Scope of Appellate Review of Denial*
*of a Section 1538.5 Motion to Suppress.*

Effective January 1, 1987, section 1538.5, subdivision (i), was amended and now provides in pertinent part: "If the motion was made at the preliminary hearing, unless otherwise agreed to by all parties, evidence presented at the special hearing shall be limited to the transcript of the preliminary hearing and to evidence which could not reasonably have been presented at the preliminary hearing, except that the people may recall witnesses who testified at the preliminary hearing. . . . The superior court shall base its ruling on all evidence presented at the special hearing and on the transcript of the preliminary hearing, and the findings of the magistrate shall be binding on the superior court as to evidence or property not affected by evidence presented at the special hearing."

Prior to this amendment, the provisions of section 1538.5, subdivision (i), of the statute provided: "If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion in the superior court at a special hearing relating to the validity of the search or seizure which shall be heard prior to trial . . . . The defendant shall have the right to litigate the validity of a search or seizure *de novo* on the basis of the evidence presented at a special hearing." (§ 1538.5, subd. (i) (1977 as amended).) Thus, under the section's predecessor, the superior court was not bound by the determinations of the magistrate at the preliminary hearing and the issue was relitigated without restriction subject to narrow appellate review.

"[I]t is settled that in ruling on a motion under section 1538.5 the superior court sits as a finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences, and hence that on review of its ruling by appeal or writ all presumptions are drawn in favor of the

factual determinations of the superior court and the appellate court must uphold the superior court's express or implied findings if they are supported by substantial evidence." (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

In making its determination, the trial court followed a two-step procedure in ruling on the de novo suppression motion. First, the court determined the facts relating to the challenged search and seizure. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) Second, the trial court determined whether based on the facts, "the search was unreasonable within the meaning of the Constitution." (*Ibid.*) On review of the decision, the appellate court measured "the facts as found by the trier, against the constitutional standard of reasonableness." (*Ibid.*)

Notably, the de novo hearing conducted by the trial court was independent of the preliminary hearing. The preliminary hearing transcript was "not admissible at a de novo suppression hearing in the superior court absent a stipulation of the parties or applicability of the hearsay exception for former testimony." (*Wilder* v. *Superior Court* (1979) 92 Cal.App.3d 90, 94 [154 Cal.Rptr. 494].)

The partial effect of the de novo process was to duplicate litigation of issues and repeat testimony with the attendant result of consumption of precious court time that could be spent on unlitigated issues. Apparently sensing a need for reform, the Legislature amended section 1538.5, subdivision (i), limiting de novo review in the superior court where the motion was previously made at the preliminary hearing. The Legislative Counsel's Digest provides the following expression of purpose: "If the motion [§ 1538.5 suppression motion] was made at the preliminary hearing, unless otherwise agreed to by all parties, evidence presented at the special hearing shall be limited to the transcript of the preliminary hearing and to evidence which could not reasonably have been presented at the preliminary hearing, except as provided. The bill would provide that if the People object to the presentation of evidence at the special hearing, the defendant shall be entitled to an in camera hearing to determine that issue. The bill would require the superior court to base its ruling on all evidence presented at the special hearing and on the transcript of the preliminary hearing, and the findings of the magistrate would be binding on the superior court as to evidence or property not affected by evidence presented at the special hearing." (Stats. 1986, ch. 52, No. 3, West's Cal. Legis. Service, p. 51; No. 2 Deering's Adv. Legis. Service, p. 50.)

The consequence of the legislation is to alter the first step of the procedure set forth in *Lawler*. ■ Where the motion was made previously at

the preliminary hearing and where the evidence at the special hearing is limited to the transcript of the preliminary hearing, the trial court is no longer vested with unrestricted power to determine the facts.[2] Rather, it is bound by the factual findings of the magistrate and, in effect, becomes a reviewing court drawing all inferences in favor of the magistrate's findings, where they are supported by substantial evidence.

The amendment also affects the scope of appellate review where the matter is submitted to the superior court on the preliminary hearing transcript. Because the superior court is the reviewing court rather than the fact-finding court, the appellate court no longer reviews the findings of the trial court. Rather, as with review of a section 995 motion, the appellate court disregards the findings of the trial court and reviews the determination of the magistrate who ruled on the motion to suppress. (See *People* v. *Laiwa, supra,* 34 Cal.3d at p. 718.) The appellate court, in reviewing the magistrate's findings, applies the same standard previously applied to the trial court's findings: "all presumptions are drawn in favor of the factual determinations of the [magistrate] and the appellate court must uphold the [magistrate's] express or implied findings if they are supported by substantial evidence." (*Id.* at p. 718.)

Both the search and the preliminary hearing in the present case were conducted after the effective date of the amendment to section 1538.5, subdivision (i), and the motion in superior court was submitted on the transcript of the municipal court proceedings and oral argument. Thus, this court is bound by the factual determinations, if any, made by the magistrate that are supported by substantial evidence. We then evaluate the reasonableness of the search based on the facts as found by the magistrate. (34 Cal.3d at p. 718.)

## II

*The Magistrate Did Not Err in Finding No Violation of the Knock-notice Requirements of Section 1531.*

Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

---

[2] Unless agreed to by the parties, section 1538.5, subdivision (i), now limits the evidence to the preliminary hearing transcript and to evidence that "could not reasonably have been presented at the preliminary hearing." Where additional evidence is presented, the findings of the magistrate, to the extent they are affected by the additional evidence, are not binding on the superior court. This allows the superior court to exercise its independent judgment on issues on which additional evidence is introduced. In the present case, the evidence was limited to the preliminary hearing transcripts.

■ Under this section, police officers are required: "(1) to knock or utilize other means reasonably calculated to give adequate notice of their presence to the occupants, (2) to identify themselves as police officers, and (3) to explain the purpose of their demand for admittance." ■ ■ ■ ■ (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 319 [82 Cal.Rptr. 348, 461 P.2d 628].)[3] In the present case, the magistrate apparently found that section 1531 had been satisfied. As previously noted, Officer Ericsson's testimony as to the exact sequence of events at the time of entry was somewhat ambiguous. On direct examination, Ericsson testified that the announcement of identity and purpose occurred prior to entry. However, on cross-examination, Ericsson testified that the announcement was made as the officers entered the house.

Shortly after Ericsson finished testifying, appellant orally moved to suppress the evidence seized in the search on the grounds of failure to comply with knock-notice requirements. (§ 1531.) Appellant argued that on cross-examination, Ericsson testified he told Mrs. Ramsey that he was from the sheriff's department and that he had a search warrant as he walked past her into the residence. Relying on *People* v. *Franco* (1986) 183 Cal.App.3d 1089 [228 Cal.Rptr. 527] which held that "[a]nnouncement of identity and purpose must be made outside the dwelling before entry, not inside or as the officers are crossing the threshold" (*id.* at p. 1094), appellant argued the knock-notice provision had been violated thus requiring suppression of the items seized in the search.

After taking a short recess to review the *Franco* case, the magistrate denied the motion. Distinguishing *Franco,* the court stated: "As I indicated, I have read the Franco matter, it is the Court's opinion that counsel has correctly stated the holding in Franco.

"However, it is also the Court's opinion that in examining a holding in any case, it is very important to look at the factual situation that led up to that particular holding. And I will note that in the Franco matter, the officers that went to this location which is described by the Court as a hut, made of plywood, chicken wire and pieces of carpet, had a drape of some sort, a blanket, hanging in front. And evidently, the officer made absolutely no effort to comply with the knock/notice requirement. That basically what happened was, without announcing himself or demanding admittance, Officer Johnson opened the drape, looked inside, basically, and observed the defendant in this matter.

---

[3] *Duke* dealt with an entry pursuant to section 844. However, "[t]he two sections are governed by similar principles of law and for many purposes the cases applying one or the other of the statutes may be interchangeably cited." (*People* v. *Peterson* (1973) 9 Cal.3d 717, 722, fn. 7 [108 Cal.Rptr. 835, 511 P.2d 1187].)

"I think that is a very different situation, certainly for policy considerations, than the case that we are dealing with here, *where the evidence, by all counts, indicates that Deputy Ericcson [sic] went to the front door, knocked, and that Mrs. Ramsey came to that front door,* at which time the officer did provide by way of ruse, a false name, which certainly, I don't think counsel would contend is not admissible. Certainly the courts in cases in the past have held that an officer may, if you will, lie to an individual to gain entry.

*"And my notes, Mr. Butkiewicz, and I had a chance to review them as far as direct examination of Deputy Ericcson, [sic] are as follows: That Deputy Ericcson [sic] went to serve the search warrant at 5909 Webb Way, that he rang the doorbell, that Mrs. Ramsey answered the door. That Deputy Ericcson [sic] asked for Mr. Ramsey, and Mrs. Ramsey indicated that Mr. Ramsey was asleep.*

"And it's my understanding when this conversation took place, Mrs. Ramsey, as is the case when you answer a door, was standing at the doorway and was indeed inside of her residence.

*"My recollection is that then Deputy Ericcson [sic] told, and in fact this is what I have in my notes, that Deputy Ericcson [sic] told Mrs. Ramsey that they had a search warrant.* He at that time identified Mrs. Ramsey for the record as being the individual that he saw and talked with at the door. *And that the next thing that occurred was that Deputy Ericcson [sic] went inside and subsequently found Mr. Ramsey asleep in the northeast bedroom.*

"I think that the compliance, and again, I am not going to be treating this section just because it was an arrest warrant, differently than if it were a search warrant, I think the policy behind the two statutes is very, very similar, and I would not treat them differently for purposes of analyzing this situation.

"I do feel that the deputy in this case has gone far and beyond what was a very apparent violation in the Franco matter, where the officer apparently knew in Franco that it was a strong likelihood that Mr. Franco was in his hut, and nonetheless just went on inside without attempting to comply.

"I think this situation is totally different under the facts. And I think that to apply a literal holding of the Franco case to this situation, would turn the law, long and established in this area, on its ear. So I am going to deny the motion on that grounds [sic]." (Italics added.)

On appeal, the reviewing court is bound by the factual findings of the magistrate if they are supported by substantial evidence. (See *People* v. *Lawler, supra,* 9 Cal.3d at p. 160.)

■ "*'Evidence, to be "substantial"* [our italics] must be "of ponderable legal significance . . ˙. reasonable in nature, credible, and of solid value." ' [Citations.] And when a jury's verdict or a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is *substantial evidence,* contradicted or uncontradicted, which will support the finding of fact, and when two or more inferences can reasonably be deduced from the facts as found, a reviewing court is without power to substitute its deductions for those of the trial court or jury. *It is of no consequence that the trier of fact believing other evidence, or drawing different inferences, might have reached a contrary conclusion. (People* v. *Johnson, supra,* 26 Cal.3d 557, 576-577; *Grainger* v. *Antoyan* (1957) 48 Cal.2d 805, 807 . . . .)" *(People* v. *De-Cosse* (1986) 183 Cal.App.3d 404, 408 [228 Cal.Rptr. 114], italics in original.)

A review of the magistrate's statement in issuing her ruling discloses she made an express factual finding that the announcement of identity occurred prior to entry.

■ "The finding is the ascertainment of the fact by the judge. [Citation.] It is the court's decision upon the facts. [Citation.] It is the court's best judgment of what the entire evidence establishes. [Citation.] Its purpose is to make the case easily reviewable 'by exhibiting the exact grounds upon which the judgment rests.' " *(Herman* v. *Glasscock* (1945) 68 Cal.App.2d 98, 101-102 [155 P.2d 912].) ■ Officer Ericsson's testimony on direct examination supports the magistrate's conclusion that the announcement occurred prior to entry. ■ That the magistrate reasonably could have reached a different conclusion based on Ericsson's testimony on cross-examination is irrelevant on appeal. *(People* v. *Peterson, supra,* 9 Cal.3d at pp. 721-722.)

■ Given the magistrate's finding that announcement of identity and purpose occurred prior to entry, appellant's reliance on *People* v. *Franco, supra,* 183 Cal.App.3d 1089 is misplaced. In *Franco,* police officers armed with an arrest warrant, entered defendant's hut without either knocking or identifying themselves as police officers. *(Id.* at p. 1094.) The court held such conduct violated knock-notice requirements and further held that the officers' failure was "not cured by their announcement *after* entering." *(Ibid.)* The present case is clearly distinguishable as the magistrate, adopting Officer Ericsson's testimony on direct examination, found that the announcement of identity and purpose occurred prior to entry. Thus, the magistrate correctly concluded the knock-notice requirements had been satisfied and properly denied the motion to suppress.

The judgment is affirmed.

Woolpert, Acting P. J., and Best, J., concurred.