[No. A055977. First Dist., Div. Two. Mar. 17, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
MYRON WILLIE LEE BISHOP, Defendant and Appellant.

COUNSEL

E. Evans Young, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, and George F. Hindall III, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

SMITH, J.—Myron Bishop entered a changed plea of guilty to one count of cocaine possession (Health & Saf. Code, § 11350, subd. (a)), with other

charges dismissed in a negotiated disposition, after the superior court denied his renewed motion to suppress evidence. Granted felony probation with a nine-month jail term condition, he appeals challenging the suppression ruling. (Pen. Code, § 1538.5, subd. (m).) We affirm.

*Preliminary hearing*

Bishop first sought suppression at the preliminary hearing in municipal court, and that evidence must be separately summarized due to the issues raised on appeal.

San Francisco Police Officer Douglas Hansen testified that he was on routine patrol with partner Gary Constantine about 2:30 p.m. on March 5, 1991, when he saw what looked to be a drug sale going on between Bishop and Lavelle Shaw outside a housing project on Fitzgerald Street. As he drove eastbound on Fitzgerald, Hansen saw Bishop double-parked, facing westbound on the opposite side. Bishop sat in the driver's seat with both front windows down, and Shaw was talking with him at the driver's side window, holding some currency. On the other, curb side, of the car stood a man Hansen did not know, examining what appeared to be a large green bud of marijuana. Hansen slowed his patrol car to a stop about half a car length from Bishop's. As soon as he did and made eye contact with the man on the curb side, the man threw the bud into the car and took off running northbound toward the projects. Simultaneously, Shaw took off southbound across the street. Eight to twelve other people were near the car (some sitting on other double-parked cars), clustered in the general area of a dumpster, but were no closer than ten feet from Bishop's car.

Hansen knew the area for its high narcotics activity (thousands of narcotics arrests in the last 10 years) and knew both Shaw and Bishop to be drug dealers. He had participated in four arrests of Shaw for cocaine sales and knew that Shaw was on probation. He had known Bishop for eight to ten years, had also arrested him (apparently in 1986 and 1988) and thought he was still on probation. Hansen's 1986 arrest of a woman in Bishop's company had prompted a federal false-arrest lawsuit by her which settled in 1987.

Suspecting he had interrupted a drug deal, Hansen exited his car and approached Bishop, without his gun drawn. Nearing the car, he saw Bishop moving about in the seat and stuffing clear plastic baggies containing marijuana into his right jacket pocket. He ordered Bishop out of the car, arrested and handcuffed him, and retrieved the baggies from the jacket. He also found two bindles of cocaine in the pocket. On removing them, Bishop

said, "You know I smoke weed with cocaine . . . ." Hansen turned at some point to see that another patrol car had pulled up behind his own, sometime after the two men ran. After driving Bishop to the station, Hansen found three wrapped rocks of crack cocaine in the back seat where Bishop had sat. A back-up officer recovered the tossed marijuana bud from Bishop's car.

Officer Constantine testified consistently. He had followed behind Hansen on the way to the car. He did not know the suspects or see the marijuana bud tossed but did see the currency in Shaw's right hand and the two men flee. He did not see the marijuana bags from his vantage point but heard Hansen alert him of Bishop putting them in the jacket and then saw Hansen order Bishop out and remove them.

Defense counsel asked both officers whether the other people in the area were gambling. Both said they did not recall seeing gambling but that dice games and gambling were common on the street there. Neither one recalled going over to the group before going to Bishop's car. Their focus was on the car.

The defense called two witnesses who contradicted the officers' accounts, basically saying that the officers broke up a dice game before going over to Bishop's car. Robert Hearne testified that he was across the street and aware that Bishop was double-parked. He did not see what went on at Bishop's car beforehand, but he saw the two officers pull up, get out and go over to a dice game attended by "[q]uite a few" people near the dumpster. *Then* they went over to the car and pulled Bishop out. Hearne left at that point and saw nothing further. Not having seen what preceded the police arrival, he had no recollection of anyone standing at or running from Bishop's car. Hearne was a longtime acquaintance of Bishop. He also knew Officer Hansen. Hansen had arrested him in late 1986 for possessing a controlled substance, and the arrest led to a felony conviction for which probation was granted and later revoked.

Lavelle Shaw testified that he was shooting dice at a game on the sidewalk when someone warned of police approaching. He stood up and pocketed his money ($200 or $300). Hansen came up and asked what he was doing; Shaw said he was shooting dice. When Hansen turned his attention to the ground around the dumpster, Shaw walked across the street to be away from there in case drugs were found. The officers eventually went over to a double-parked car, made a man get out and searched him. Shaw did not know the man or stand at his car.

Like Hearne, however, Shaw knew Hansen. Hansen had arrested him in 1988 for cocaine possession for sale, and Shaw was still on probation for

that offense. Hansen had harassed him on prior occasions and had a reputation among young Black men in the Potrero Hill, Hunter's Point and Bayview areas for searching without any reason.

The municipal court denied suppression, commenting that some testimonial conflicts might be reconcilable but that the issue turned on credibility and that the evidence preponderated in favor of denial.

### Special hearing

Bishop renewed his motion in superior court, urging that the testimony of two further witnesses could not have been presented with reasonable diligence at the preliminary hearing. The court heard the two witnesses on that ground.[1]

Sam Thomas testified that he was shooting dice in a small group near the dumpsters, and that Lavelle Shaw was doing so in a larger group nearby, when he heard someone warn that the police were "raiding." Thomas had been on his knees, his back to the street. When he looked and saw police units coming, he picked up his dice and money and stood up. Two officers, one of them Hansen, got out, broke up the larger dice game and then approached Bishop's car. Thomas knew Bishop but, until getting up from the dice game, was unaware of Bishop's car being there. He had not been watching the car and did not see anyone stand around or run from it. He had been arrested several times by Hansen and, at the time of testifying below, was in jail custody awaiting removal to state prison for possession-for-sale after probation revocation. Hansen had been present for his arrest leading to the revocation.

Stephen Boyd, who went to school with Bishop's older brother, testified to being across the street talking with two friends when Bishop was arrested.

---

[1] Penal Code section 1538.5, subdivision (i), states in part: "If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing . . . , the defendant shall have the right to renew or make the motion in the superior court at a special hearing relating to the validity of the search or seizure . . . . If the motion was made at the preliminary hearing, unless otherwise agreed to by all parties, evidence presented at the special hearing shall be limited to the transcript of the preliminary hearing and to evidence which could not reasonably have been presented at the preliminary hearing, except that the people may recall witnesses who testified at the preliminary hearing. If the people object to the presentation of evidence at the special hearing on the grounds that the evidence could reasonably have been presented at the preliminary hearing, the defendant shall be entitled to an in camera hearing to determine that issue. The superior court shall base its ruling on all evidence presented at the special hearing and on the transcript of the preliminary hearing, and the findings of the magistrate shall be binding on the superior court as to evidence or property not affected by evidence presented at the special hearing. . . ."

Boyd did not notice Bishop at first but noticed two dice games going on and saw the police arrive. He saw officers go first to one game, pick something up off the ground (dice, he thought) and then walk over to a nearby car. He saw Bishop get out of the car and be frisked. He had not until then paid attention to that or other cars on the street, but he did not recall seeing anyone standing around them. Boyd had no prior felony convictions.

The superior court, after reviewing the preliminary hearing transcript, felt itself bound by the magistrate's findings because they were not "affected by" the new testimony within the meaning of Penal Code section 1538.5, subdivision (i). It denied suppression.

I

Penal Code section 1538.5, subdivision (i) (hereafter subdivision (i)), provides that, when the superior court takes additional evidence at a special hearing on a renewed motion to suppress, the court must base its decision on the new and former (preliminary hearing) evidence and that the findings made by the magistrate at the preliminary hearing are "binding . . . as to evidence or property not affected by evidence presented at the special hearing" (fn. 1, *ante*). ▉ The quoted phrase has not yet been squarely construed. However, *People* v. *Ramsey* (1988) 203 Cal.App.3d 671 [250 Cal.Rptr. 309], offered in dictum: "Where additional evidence is presented, the *findings of the magistrate*, to the extent they are affected by the additional evidence, are not binding on the superior court. This allows the superior court to exercise its independent judgment on issues on which additional evidence is introduced. . . ." (*Id.*, at p. 679, fn. 2, italics added.) The People urge, consistently with that dictum, that subdivision (i) allows de novo determination of material *findings* "affected by" the new evidence. We agree that prior findings are the proper focus.[2]

▉ What remains, and what divides the parties, is how a superior court judge is to determine whether prior findings are "affected by" the new

---

[2]Bishop disagrees, urging: "It is the evidence, not the findings of the magistrate which are based on that evidence, which must be affected before the superior court is free to decide an issue de novo."

Bishop misconstrues the statutory language. Subdivision (i) makes prior findings binding except as to "evidence or property not affected by" the new evidence. Contrary to Bishop's view, the term "evidence" in that phrase does not mean preliminary hearing evidence. In context, "evidence or property" refers to the "evidence" or "property" sought to be suppressed by the motion (Pen. Code, § 1538.5, subds. (a) and (d); fn. 1, *ante*)—i.e., the *fruits* of an assertedly illegal search or seizure.

Thus, the statute asks the superior court to determine whether new evidence received at the special hearing affects the fruits-evidence sought to be suppressed. It does not speak in terms of new evidence's effects on "findings." Nevertheless, to ask whether fruits-evidence is "affected by" new evidence is necessarily to ask whether *findings* material to suppressing those fruits are "affected by" the new evidence. This practical realization seems to have

evidence. Subdivision (i) does not define "affected by," and there are apparently no legislative materials directly answering the question.[3] Nevertheless, the statute as a whole provides some guidance. ▮ The 1986 amendments which added the disputed language were designed to eliminate the waste and cumulative presentation of evidence inherent in the former practice of allowing a defendant complete de novo review in the superior court of a motion already adjudicated in the municipal court. (*People* v. *Ramsey*, *supra*, 203 Cal.App.3d 671, 677-679; *People* v. *Trujillo* (1990) 217 Cal.App.3d 1219, 1223-1224 [266 Cal.Rptr. 473].) The current provision for newly discovered evidence at the special hearing roughly parallels the former provision for such evidence at a second superior court hearing (*People* v. *Nelson* (1981) 126 Cal.App.3d 978, 981-982 [179 Cal.Rptr. 195]). Now, however, the renewed motion's scope is limited to the new evidence plus a preliminary hearing transcript (*Anderson* v. *Superior Court* (1988) 206 Cal.App.3d 533, 538-539 [253 Cal.Rptr. 651]) and testimony from witnesses which the People may recall to testify live at the special hearing (*People* v. *Hansel* (1992) 1 Cal.4th 1211, 1216-1218 [4 Cal.Rptr.2d 888, 824 P.2d 694]). It is a more limited de novo review, but the central idea is the same. The goal of resolving suppression issues early and in a single hearing is compromised, for fairness, by allowing a defendant to present evidence which was not available the first time around.

In that context, subdivision (i) further limits de novo review to findings "affected by" the new evidence, a constraint obviously designed to avoid relitigating all issues. We reject, initially, the suggestion that new evidence "affects" a finding anytime it is *relevant to* that finding. ▮ Evidence is relevant if it has *any* tendency in reason to prove or disprove a disputed fact properly at issue. (*People* v. *Edelbacher* (1989) 47 Cal.3d 983, 1015 [254 Cal.Rptr. 586, 766 P.2d 1]; Evid. Code, § 210.) ▮ That hair-trigger standard could undermine the goal of conserving judicial resources and invite abuse. Here, for example, the key issue of what the officers saw to justify searching Bishop depended in part on how credible they were as witnesses. Witness credibility in turn depends not just on evidentiary conflicts but also on general factors like bias, reputation and character, all of which have *some tendency in reason* to prove or disprove truthfulness. If mere relevance were the standard, a defendant could often unearth new

---

inspired the dictum in *People* v. *Ramsey*, *supra*, 203 Cal.App.3d 671, at page 679, footnote 2, quoted in text above.

[3] A Legislative Counsel's Digest quoted in *People* v. *Ramsey*, *supra*, 203 Cal.App.3d at page 678, simply paraphrases the relevant language without explanation: " '. . . The bill would require the superior court to base its ruling on all evidence presented at the special hearing and on the transcript of the preliminary hearing, and the findings of the magistrate would be binding on the superior court as to evidence or property not affected by evidence presented at the special hearing.' [Citation.]"

evidence bearing on some general aspect of credibility and obtain de novo review, even though that evidence was cumulative and peripheral.

A relevance standard also conflicts with the ordinary meaning of the words "affected by." Standard rules of construction require us to give the words in a statute the meaning they bear in ordinary use. (*People* v. *Hansel*, *supra*, 1 Cal.4th 1211, 1217.) To "affect" commonly means "to act upon," "to produce an effect . . . upon" or "to produce a material influence upon or alteration in . . . ." (Webster's Third New Internat. Dict. (1965) p. 35.) "AFFECT applies to a stimulus strong enough to bring about a reaction . . . or bring about some modification, usu[ally] without total change . . . ." (*Ibid.*) New evidence which is "relevant" to a prior finding might not, on balance, be strong enough to alter or materially influence that finding. We therefore hold that new evidence must be more than just relevant before a prior finding is "affected by" it (subd. (i)).

██ The superior court judge here properly went beyond mere relevance and correctly focused on whether the magistrate's findings were "affected by" the new evidence. He observed that the critical implied finding was Officer Hansen's credibility. Hansen testified seeing Bishop stuff marijuana baggies into his jacket, which provided probable cause to search and grounds for the ensuing seizures. ██ ██ ■■ ■ Strictly speaking, testimonial disputes over whether suspects really stood at and fled from the car, or whether Hansen first broke up the dice game before going to the car, were unnecessary to a probable cause finding.[4] ██ Nevertheless, the judge discerned that if the officer lied about those things, he may have lied about seeing the baggies.

In deeming the credibility finding unaffected by the new evidence, the judge reasoned that the new witnesses mostly corroborated evidence already

---

[4]It is puzzling why probable cause was even at issue. Hansen testified that he thought Bishop was on probation for a narcotics offense, and the probation report confirms this. It seems inconceivable that Bishop did not have a search-consent condition, yet it was not offered into evidence. The defense might have argued harassment (*People* v. *Bravo* (1987) 43 Cal.3d 600, 607-608 [238 Cal.Rptr. 282, 738 P.2d 336]), but all evidence shows that Bishop was double-parked, justifying inquiry apart from the disputed drug-related observations.

Also puzzling is the fuss below over whether Hansen's knowledge of the area and suspects justified detaining Bishop. Double-parking was a clear justification. Further, the record shows no detention at all until Hansen, seeing the marijuana bags, ordered Bishop out. Bishop was already stopped, double-parked, and Hansen stopped half a car length away, apparently not blocking him in. The mere approach of an officer (without a weapon drawn) does not amount to a detention (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554-555 [64 L.Ed.2d 497, 509-510, 100 S.Ct. 1870]), and no "search" in the constitutional sense occurs when the officer sees drugs from a legal vantage point (*People* v. *Edelbacher*, *supra*, 47 Cal.3d 983, 1015; *People* v. *Gale* (1973) 9 Cal.3d 788, 794 [108 Cal.Rptr. 852, 511 P.2d 1204]).

considered by the magistrate: the officers had stopped at a dice game first and Shaw was at one of the games (according to Thomas). Neither new witness had focused on Bishop's car before the officers went to it and thus could not directly contradict the officers' observations. Also, one of them was yet another Hansen arrestee, jailed at the time of the hearing, with a probable grudge. The judge also commented: ". . . I don't think the question is for me what I would have done if I were the magistrate. Otherwise, I'm rewriting this statute. I think it's much more limited than that. . . ." The judge considered the prior evidence unaffected because, with one exception, the new evidence presented "views that the magistrate previously had . . . ."

Those comments bring to mind the process used to determine whether, on a motion for new trial, newly discovered evidence is "material to the defendant" (Pen. Code, § 1181, subd. 8), a key component of which asks whether the evidence is only cumulative and would render a different outcome probable (*People* v. *Farmer* (1989) 47 Cal.3d 888, 917 [254 Cal.Rptr. 508, 765 P.2d 940]; *People* v. *McDaniel* (1976) 16 Cal.3d 156, 178-179 [127 Cal.Rptr. 467, 545 P.2d 843]). The judge's task of deciding the effect of newly discovered evidence on a prior determination has obvious and useful parallels. The phrase "affected by" in subdivision (i) only calls for a probable material influence in or modification of the prior finding, not the probable different outcome required for a new trial, but the process of decision is otherwise closely analogous. (The judge's comments here, we note, do not betray any misunderstanding that a different outcome was needed.)

The judge intuitively borrowed a useful new-trial-motion standard when he used an objective, not subjective, test to weigh the evidence's effect on the magistrate's finding. He declined to query what *he* would have done had *he* been in the magistrate's shoes. He impliedly opted for an objective test, weighing the probabilities of whether *a* trier of fact would have been materially influenced by the total evidence, new and old. This comports with the objective test used on a new trial motion where retrial after a nonjury trial, like the de novo review here, will be before the same judge who determined the effect of the new evidence. (*People* v. *Huskins* (1966) 245 Cal.App.2d 859, 862 [54 Cal.Rptr. 253]; *People* v. *Clauson* (1969) 275 Cal.App.2d 699, 706 [80 Cal.Rptr. 475].) That is appropriate in this context as well. A subjective standard, by contrast, could effectively require a judge to exercise de novo review to determine whether de novo review was needed.

It is also fitting to adopt an abuse-of-discretion standard, as is used to review new trial motion rulings based on newly discovered evidence. (*People* v. *McDaniel, supra*, 16 Cal.3d 156, 179.) Here, as there, "the trial court

is in the best position to determine the genuineness and effectiveness of the showing in support of the motion [citation]." (*People* v. *Minnick* (1989) 214 Cal.App.3d 1478, 1481 [263 Cal.Rptr. 316].) That is especially so where the new evidence and its effect on a prior finding involve the credibility of a key witness. (Cf. *id.*, at p. 1482.) While a reviewing court defers to the superior court judge's assessment regardless of whether the new evidence is presented live or by affidavit (*People* v. *Gaines* (1962) 204 Cal.App.2d 624, 629 [22 Cal.Rptr. 556]), added deference seems in order where the judge has heard the witnesses testify live. The judge's perspective in that case cannot be replicated on appeal.

We find no abuse of discretion. The new witnesses did mainly duplicate the views already presented at the preliminary hearing, and their testimony on the key issue of Hansen seeing the marijuana-filled baggies raised inferential doubts rather than directly attacking the observation. Cumulative evidence in this context, as on a motion for new trial, naturally has less force or effect than new information would, and evidence "which does not affirmatively prove an issue, but is to be used only to impeach or contradict an opposing witness," likewise tends to impress weakly. (8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 34, p. 434; see also 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Judgment and Attack in Trial Court, §§ 3059-3060, pp. 3785-3786.)

Next, Hansen did not stand alone in his testimony. His partner, Gary Constantine, while not seeing the baggies until the search, testified that he did hear Hansen shout out an alarm about them as the officers neared the car. Constantine also corroborated Hansen's memory of going straight to the car. Thus, implied credibility findings as to *both* officers had to be "affected by" the new evidence, a heightened burden. Both impeaching witnesses at the preliminary hearing, moreover, had themselves been impeached with their criminal backgrounds and, specifically, with their recent arrests by Hansen.

Finally, the judge below viewed the new witnesses' live testimony and demeanor in objectively assessing whether a factfinder would consider the prior findings affected. He was impliedly not impressed with their credibility, and some of the likely reasons are apparent even on a cold record. Thomas, who claimed to have been shooting dice and to have seen Shaw in a nearby game interrupted by Hansen, had been unavailable at the preliminary hearing because he was facing a probation violation flowing from a recent arrest by Hansen. Defense counsel feared that having him testify "would incriminate him" in the probation revocation matter. Boyd, who said he stood across the street and saw officers go to the dice games, apparently had no record or prior dealings with Hansen. However, he had gone to

school with Bishop's older brother and had known Bishop for 15 years. No abuse of discretion appears.

## II

■ Where the magistrate's findings are "binding" at the special hearing in superior court (subd. (i)), the judge acts as a reviewing court. Respecting the magistrate's power to judge credibility, resolve conflicts, weigh evidence and draw inferences, the superior court judge draws all presumptions in favor of the magistrate's factual determinations, express or implied, and upholds them if they are supported by substantial evidence. (*People* v. *Ramsey, supra,* 203 Cal.App.3d 671, 677-678; cf. *People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

■ Bishop attacks the magistrate's implied finding that Hansen in fact saw the marijuana baggies before searching him. We have Hansen's direct testimony to support such a finding, of course, but Bishop maintains that the magistrate did *not* reject contrary testimony, i.e., did *not* resolve the conflict on credibility grounds. Instead, he argues, the magistrate got around the problem by finding the testimony reconcilable, and he urges that the evidence does not support a finding reconciling *all* of the pertinent testimonial conflicts.

This argument fails in its premise. The magistrate did speak of the testimony being reconcilable in some respects. For example, the officers had to pass near the sidewalk game on their way to Bishop's car, perhaps leaving room to infer that they interrupted a game in that way. However, those musings do not amount to findings, and the magistrate closed his comments this way: "[W]e have an issue here that the Court has to make a decision on, as to which version of the testimony preponderates . . . ." By finding that one "version" preponderated over the other, he clearly made decisions on credibility. Bishop's point that the testimonial conflicts could not be fully reconciled concedes as much. Having no express findings by the magistrate, we imply all credibility findings to support his ruling (*People* v. *Fulkman* (1991) 235 Cal.App.3d 555, 560 [286 Cal.Rptr. 728]), and those findings are supported by the preliminary hearing evidence.

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 24, 1993.