Filed 5/22/15  P. v. Steenblock CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G048534 |
|      v. | (Super. Ct. No. 11HF1422) |
| DAVID ALAN STEENBLOCK II, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge.  Affirmed.

Susan K. Massey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Kelley Johnson and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Defendant David Allen Steenblock II was convicted of attempted exhibition of harmful matter to a minor (Pen. Code, §§ 664, subd. (a), former 288.2, subd. (b))[1] after engaging in chat room conversations with a detective posing as a 13-year-old girl.  During the course of their relationship, they engaged in sexually explicit conversation, and defendant sent her a video of himself masturbating.  Defendant argues the trial court abused its discretion by allowing the prosecution to play the video for the jury, and there was insufficient evidence of his intent to seduce the purported victim.

While the video is both disturbing and was certainly prejudicial to defendant, the prejudice was outweighed by its exceedingly high probative value.  The video showed defendant committing the crime.  With respect to defendant's intent to seduce argument, there was more than substantial evidence he sent the video to her to groom her for later sexual relations.

I

FACTS

Between December 2009 and July 2010, defendant engaged in an online relationship with what he believed was a girl named "Crissy."  He told her that he was 26, and she said she was 13.  His favorite age, he told her, was 12 to 15.  During the course of these conversations, they frequently engaged in explicit sexual conversations about engaging in oral and vaginal sexual activity.  In their earliest conversations, he asked her if she wanted to engage in oral sex, and said he would like to perform oral sex on her and insert his fingers into her vagina.

Crissy said at numerous points that she had never had sex, and was "scared."  Defendant made comments such as "i should come out there, make you watch nasty videos . . . and let you practice sucking on me."  Defendant turned on his Web camera (webcam) so that she could see what he looked like.  In a later conversation, they

---

[1] Subsequent statutory references are to the Penal Code unless otherwise stated.

2

discussed that she was in Arizona, and he was a seven-hour drive away. He said he was serious about coming to see her. In another conversation, defendant talked about bringing a van or blanket for sexual activity. He acknowledged that being with her would be "kind of risky." He turned on his webcam again. He said she seemed "nervous about full sex" and he said he would be "gentle."

Defendant then said that he wanted to masturbate and would turn his camera off. Crissy asked if he had to, then defendant asked if she wanted to watch. She said "ya if you want to." Crissy told him she could only see to his stomach. The webcam angle then changed, and she could see his penis. Crissy said, "wow omg that is big." The following exchange then occurred in the electronic chat room:

"[Defendant]: glad you like the look of it

"[Crissy]: well now I am realy scared to do real sex with u

"[Crissy]: its to big

"[Defendant]: ok

"[Defendant]: we dont have too

"[Crissy]: do u think woud i have to put the hole thing inmy mouth

"[Defendant]: we will see

"[Crissy]: i dont think it will fit

"[Defendant]: hehe

"[Defendant]: only one way to find out

"[Crissy]: wow

"[Defendant]: how do you feel

"[Defendant]: when u see it

"[Crissy]: like kinda funny

"[Defendant]: in a good way?

"[Crissy]: ya tingly

"[Defendant]: yea

3

"[Defendant]:  you will like it

"[Defendant]:  u playing with yourself?

"[Crissy]:  nooooooo

"[Crissy]:  i dont do that

"[Defendant]:  why not

"[Crissy]:  idk just to wierd

"[Defendant]:  oh

"[Defendant]:  do you want me to stop

"[Defendant]:  or do you want to see me cum

"[Crissy]:  r u gonna cum

"[Defendant]:  soon yea

"[Crissy]:  ya

"[Crissy]:  u realy have big 1!

"[Crissy]:  were dose the cum go

"[Crissy]:  dont gt it on ur puter

"[Defendant]:  hehe

"[Defendant]:  nah

"[Defendant]:  just watch

"[Defendant]:  im close

"[Crissy]:  is ne 1 else watching u

"[Defendant]:  no

"[Defendant]:  just u

"[Crissy]:  wow is that how u woud want me to do it like yanking on it

"[Crissy]:  omg i saw it

"[Defendant]:  yea

"[Defendant]:  took me long enough

"[Defendant]:  phew

4

"[Crissy]:  was that how long it usualy taies to cum

"[Defendant]:  sometimes

"[Defendant]:  sometimes faster

"[Crissy]:  wered u go

"[Defendant]:  or longer

"[Defendant]:  just put something on

"[Defendant]:  oook

"[Defendant]:  i think i am going to bed now

"[Defendant]:  in a bit

"[Crissy]:  did u turn ur cam off

"[Defendant]:  yea

"[Crissy]:  k

"[Defendant]:  how'd you like the climax

"[Crissy]:  it was cool!"

Online conversations continued, focusing on defendant's desire to visit Crissy.  At one point defendant said he was "having guilt cause of our age difference," but when she said she was also talking to a 39-year-old man, he said "i shouldn't feel guilty then."  They spoke on the phone the next day, engaging in both sexual and mundane talk and discussing what defendant wanted to do when he came to visit, including sexual activity.  In a separate chat, they planned to meet on a particular Sunday and he said he needed a specific address as to where to meet her.  During another chat, he asked if she was a virgin, and when she said she was, he said, "after sunday you might not be."  When she said she might not want to "do real sex" he said that was fine, but said he would bring condoms and lubricants.  A few days later, their chat included discussion of their age difference, and defendant said "but it is you know illegal . . . i could get in serious trouble . . . and at the same time i really want u."  On the day before they were

5

supposed to meet, defendant repeated that he was coming and they discussed where to meet in detail.

At that point, Detective Pam Edgerton of the Yavapai County Sherriff's Office in Arizona — who had been playing "Crissy" online — reached out to Special Agent Kelly Kottas of Homeland Security, a member of the Orange County child exploitation task force for assistance in confirming defendant's identity. Kottas was familiar with defendant's name from an earlier child pornography investigation. Kottas verified defendant's identity and surveilled defendant on June 10, the day he was supposed to meet Crissy in Arizona, but he did not leave his house that morning.

On July 2, defendant sent Crissy a message. She was "upset" with him for not showing up, and he apologized. They discussed meeting again, but then contact ended until January 2011. Defendant contacted Crissy again and they had several short conversations. Kottas was contacted and shortly thereafter executed a search warrant on defendant's residence.

Several weeks later, defendant was interviewed by Kottas and Orange County Sheriff's Investigator Wade Walsvick. Defendant admitted to chatting about sex online with underage girls, including Crissy. He also admitted masturbating once while talking to her online, but claimed he did not do so over the webcam. When later confronted with pictures, he admitted it. Defendant claimed that while he told Crissy he would visit her, he knew it was illegal and never intended to do so. Talking to Crissy and other girls, he said, was just a fantasy for him.

During the interview, defendant also admitted that in 2003, when he was 19, he had oral sex with a 15-year-old girl. He said she had lied about her age. He also admitted having downloaded child pornography but stated he later deleted it. He told the investigators he was attracted to prepubescent girls, but he battled the urges.

Defendant was tried on one count of attempting to exhibit harmful matter to a minor (§§ 664, subd. (a), former 288.2, subd. (b)). The jury found him guilty, and

6

defendant was granted three years' formal probation with the condition that he serve 270 days in Orange County jail. Defendant now appeals.

II

DISCUSSION

A. *Statutory Framework*

Former section 288.2, subdivision (b)(1)[2] stated, as pertinent here: "Every person who, with knowledge that a person is a minor, knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by electronic mail, the Internet . . . or a commercial online service, any harmful matter, as defined in Section 313, to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent, or for the purpose of seducing a minor, is guilty of a public offense . . . ."

Section 313, subdivision (a) defines harmful matter as "taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."

B. *Admissibility of Evidence*

Prior to trial, the court heard argument on whether to exclude the video or images of defendant masturbating under Evidence Code section 352. The video, which is 18 minutes long, was admissible, the prosecution argued, because it showed what

---

[2] In 2014, former section 288.2 was repealed and reenacted in a similar form. (Stats. 2013, ch. 777, §§ 1, 2.) The current version of the statute consolidates the elements of the offense into one provision and no longer contains the phrase "seducing a minor." (§ 288.2, subd. (a)(1).) The law now expressly requires that a defendant act with the intent to "engag[e] in sexual intercourse, sodomy, or oral copulation with the other person, or with the intent that either person touch an intimate body part of the other . . . ." (*Ibid.*)

7

defendant was doing while purportedly talking to a 13-year-old girl. It was extremely probative because it showed the harmful material he was sending, and because he was also sending her messages at the time, it was also probative as to his intent. Counsel for defendant argued that because he was not going to dispute defendant's acts or sexual intent, it was moot, cumulative, and these issues could be established by less prejudicial means. A video of defendant masturbating was likely to inflame the jury.

The trial court admitted the video. The court stated: "the concept of a picture is worth a thousand words, yeah, to some extent that applies here. But more importantly to me, there is no living way that a police officer can get up on the witness stand and describe what the defendant is doing in such a way to get across a fair picture to a jury as to what was transpiring. He's moving in a certain way. His hand is moving in a certain way, and it takes — a second-by-second testimonial description of that would be unduly time-consuming, and it seems to me that that evidence not only is highly probative, but that's really the only way it can be presented to the jury. [¶] I realize sometimes the description will suffice, but I don't think it will suffice in this case. I looked at that video twice last night at home, and the bottom line is there is so much emotion. There's so many things happening. The screen shows conversation, and then you see the defendant move forward. And it is the crime. It is the crime itself in progress, if there is a crime. That's in the eye of the beholder. And the jury will have to make a determination on that, and you folks can handle that on a strategy. That video without doubt is admissible. It's more probative than prejudicial. It's highly relevant to this particular case, and I understand your concerns, [defense counsel], but I think you know in order to give the People a fair opportunity to present the case that the video should go into evidence. And I'm trying to be fair to the defendant as well. [¶] So using all my 352 discretion, one, I find that the evidence is relevant; and, two, it's more probative than prejudicial. I don't think there's any danger of misleading or confusing the jury. And essentially it will save time rather than consume time."

8

Evidence Code section 352 gives the trial court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see also *People v. Thomas* (2012) 53 Cal.4th 771, 806.)

Although there was no dispute that defendant had sent the video to Crissy, the key issue in the case (as discussed *post*) is whether he did so for the purpose of seducing her. Accordingly, the Attorney General argues, the probative value was not to prove that defendant had sent Crissy the video, but to support the prosecution's argument with respect to his intent, we agree the video had a high level of probative value.

Defendant argues the court did not "meaningfully analyze" the probative value and potential prejudice of the video. We disagree. The court's ruling on this issue reflects serious thought and consideration, and any argument that this was insufficiently "meaningful" is not supported by the record. Likewise, defendant's claim that the court did not consider the potential for prejudice is pure speculation and also contradicted by its statement that the video was more probative than prejudicial.

Defendant focuses on the court's statement that the video would save time as opposed to live testimony, but that is far from the only thing the court said: "I realize sometimes the description will suffice, but I don't think it will suffice in this case. I looked at that video twice last night at home, and the bottom line is there is so much emotion. There's so many things happening. The screen shows conversation, and then you see the defendant move forward. And it is the crime. It is the crime itself in

9

progress, if there is a crime. That's in the eye of the beholder. And the jury will have to make a determination on that . . . ." Thus, the court did not only find the video would be an effective alternative to testifying about its contents, it found such testimony itself would be inadequate.

This was not an abuse of discretion. Unlike the cases defendant cites, this was not a mere "sensationalized illustration[] of a crime," but as the court stated, the video actually showed the crime being committed. Both parties cite *People v. Holford* (2012) 203 Cal.App.4th 155). In that case, the court concluded a video of child pornography was properly admitted and shown to the jury. "Unlike the circumstances in the murder cases, the video evidence here does not illustrate the aftermath of a crime; *it was the crime*. Consequently, the probative value of the single video here was high. Like the photographic and video evidence in murder cases, child pornography is not pretty and will always be unpleasant." (*Id.* at p. 171.) Nonetheless, the court found the admission of the video within the bounds of reason. (*Ibid.*)

The same is true here in all respects. Defendant has not met the high bar to establish an abuse of discretion.


## C. Sufficiency of the Evidence

Defendant next claims there was insufficient evidence to support an intent to seduce Crissy. The standard of review is whether, after reviewing the evidence in the light most favorable to the judgment, a rational fact finder could have concluded defendant was guilty beyond a reasonable doubt. (*People v. Rowland* (1992) 4 Cal.4th 238, 269.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citations.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Evidence is substantial when it is of ponderable legal significance, reasonable in nature, credible, and of solid value. (*People v. Ramsey* (1988) 203 Cal.App.3d 671, 682.) Further, we do not reassess the

10

credibility of witnesses, and we draw all reasonable inferences from the evidence which support the jury's verdict. (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "[O]n appeal 'a defendant challenging the sufficiency of the evidence to support her conviction "bears a heavy burden," [citation] . . . [citation] of showing insufficiency of the evidence and must do so in accordance with well-established standards [citation]." (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1287.)

The jury was instructed with CALCRIM No. 1140. As given, it stated the prosecution was required to prove: "1. The defendant showed, sent . . . harmful material to a minor by electronic mail, the Internet, or a commercial on-line service; [¶] 2. When the defendant acted, he knew the character of the material; [¶] 3. When the defendant acted, he knew the other person was a minor . . . ; [¶] 4. When the defendant acted, he intended to sexually arouse, appeal to, or gratify the lust, passions, or sexual desires of himself or of the minor; [¶] AND [¶] 5. When the defendant acted, he intended to seduce the minor."

Because the last element, intent to seduce, was the heart of the matter in this case, the court also gave an instruction defining "seduce" as: "'To seduce a minor' means to entice the minor to engage in a sexual act involving physical contact between the perpetrator and the minor. It requires that the perpetrator intend to entice the minor to engage in a sexual act involving physical contact between the perpetrator and the minor."

"The purpose of section 288.2 is to prohibit using obscene material . . . 'to groom young victims for acts of molestation.' [Citation.]" (*People v. Powell*, *supra*, 194 Cal.App.4th at p. 1287.) Defendant is correct that "the 'seducing' intent element of the offense requires that the perpetrator intend to entice the minor to engage in a sexual act involving physical contact between the perpetrator and the minor." (*People v. Jensen* (2003) 114 Cal.App.4th 224, 239-240.)

11

But defendant is incorrect that the evidence is insufficient to establish this element. Defendant and Crissy did not just "engage in sexual talk or fantasy." The masturbation video, along with the continuous, repeated statements by defendant that he wanted to have sex with Crissy, the discussion of Crissy's sexual history and whether she liked older men, the repeated discussion of plans to visit complete with a provided address at defendant's request — all of these facts support the conclusion that the video was part and parcel of defendant's intent to seduce Crissy. From their earliest chats, defendant made explicit statements regarding giving and receiving oral sex with Crissy, inserting his fingers into her vagina, and watching pornography. The video in particular demonstrates defendant's intent. While he is masturbating, he said he wished she were there, he promised to be gentle about "full sex" and said he liked her watching him. It was more than a reasonable inference that the video was intended to groom Crissy for future sexual activity. Accordingly, there was sufficient evidence of defendant's guilt under the statute.

III

DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

12